## Levi Leighton

*vs.*

## W. H. Grant *et al.*

A stipulation in a contract for cutting, hauling and marking logs, that all the "logs shall be measured and scaled by the surveyor general of logs, or his deputy, *whose decision shall be final,*" does not conflict with *section* 11, *chapter* 32 of the *General Statutes*, nor is it against public policy, but is valid and effectual between the parties.

If upon an accounting and settlement between parties, a general balance is found to be due from one to the other, for which several notes are given by the debtor to the creditor, although the amount found to be due may be greater than the actual balance, yet if it appear that there was an actual balance due, such actual balance enters into all the notes, and constitutes a valuable consideration for each, and in an action upon one of the notes by the payee, the maker cannot, in the absence of fraud or mistake, set up the defense of a partial want or failure of consideration.

Under an answer, which sets up as a defense actual fraud only, the defendant cannot prove mere mistake.

A gross error in the measurement of logs by a surveyor of logs, is not *conclusive* evidence of fraud in such measurement.

Appeal by defendants from an order of the district court for Hennepin county, refusing a new trial. The action was upon a promissory note, made by the defendants in their firm name of Grant, McCaine & Co., to the firm of Stanchfield & Leighton, (of which the plaintiff was a member,) and by them assigned to the plaintiff. In their answer, the defendants alleged a written contract, (which is set forth in the opinion,) whereby Stanchfield & Leighton agreed to cut, haul and bank the pine trees, suitable for saw-logs, on certain described land, to the amount of about three million feet, at the price of $3.50 per thousand feet, the logs to be measured by the surveyor general of the Stillwater district, or his deputy,

whose decision should be final. The answer further alleged, (as stated at large in the opinion,) that Stanchfield & Leighton cut, hauled and banked, under the contract, 11,313 logs, measuring 2,366,154 feet, and no more; that the plaintiff fraudulently procured the deputy surveyor, by whom the logs were scaled, to return a false statement, showing that the logs so scaled measured 3,613,538 feet; and that the plaintiff falsely and fraudulently represented to the defendants, that his firm had cut, hauled and banked the quantity of logs returned by the scaler, and that such logs had been accurately scaled, and that the statement returned by the deputy surveyor was a true and just statement of the measurement of the logs, relying on which false statement and representations the defendants paid to Stanchfield & Leighton $6,000 in cash, and delivered to them four promissory notes, three of which had been paid, the fourth being the note in suit, and that the amount so paid was more than was due to Stanchfield & Leighton, under the contract, for the logs actually cut, hauled and banked by them, and that the note in suit was wholly without consideration, and was fraudulent and void.

The exceptions taken at the trial appear in the opinion.

MASTERSON & SIMONS, for Appellants.

YOUNG & LOWRY, for Respondent.

*By the Court.*—McMILLAN, Ch. J.—The defendants, upon the trial introduced evidence, tending to show that all the logs they had that season, except those they got from Stanchfield and Leighton, amounted to three hundred and thirty thousand feet, and that when their mill shut down, at the close of the season, there were 450 logs, and no more, in the pond and creek, amounting to not more than 75,000 feet. They also proved

Leighton v. Grant et al.

by the man who had charge of driving the Leighton logs, that he made a clean drive, leaving not a log on the landing or bank. They also proved that their mill was a steam saw mill, with but one saw for manufacturing lumber, a double circular saw. The defendants then offered to prove, that " their mill, if worked to its utmost capacity, could not saw three and one half million feet of lumber, from the time they began to saw, on the 28th of April, 1871, till they stopped sawing on the 23d of November, 1871." To this the plantiff's counsel objected, that it was incompetent, irrelevant, and immaterial. The court sustained the objections, and the defendants excepted.

The object of the evidence was, to show that Stanchfield & Leighton could not have cut the amount of logs, which they claimed to have cut. It does not appear, from the bill of exceptions, that the defendants, between the times stated in the offer, sawed into lumber, at this mill, all the logs cut by Stanchfield & Leighton, and all those driven by the witness, Gorton. The evidence offered, which at best was of an inferior character, was, therefore, properly rejected.

The contract for cutting, hauling and marking logs, set up in the answer of the defendants, and out of which the defense arises, contains the following stipulations : " All of which logs shall be measured and scaled by the surveyor general of logs for the Stillwater district, or his deputy, whose decision shall be final.   *   *   *   *   And it is further agreed that the said parties of the first part, (Stanchfield & Leighton,) shall board the scaler during the time of scaling said logs, and said parties of the second part, (Grant, McCaine & Co.) shall pay the scale bill."

Chapter 32 of the General Statutes divides the state into seven districts for the survey and measurement of logs, &c., and provides for the appointment of a surveyor general of

logs in each of such districts. Section 11 of the same chapter makes it the duty of the surveyor general, or his deputy, at the request of the owner, " to survey any logs, and, upon completing such survey, to make out a true and correct scale bill thereof, stating the person by whom, the time when, and place where, such logs, timber, or lumber was scaled, at whose request, and to whom scaled, if to any one, and the scale mark placed thereon, the number of logs, or pieces of timber, together with the mark or marks thereon, and the number of feet therein contained, and shall [to] sign the same, and thereupon he shall [to] record such bill in the books of his office, *  *  * and such bill, and the record thereof, shall each be *prima facie* evidence of the facts therein stated." *Gen. Stat. p.* 244.

It is claimed by the appellants that the stipulation in the agreement, that the decision of the surveyor general of logs or his deputy, as to the measurement of logs " shall be final," is void for two reasons: *First,* The effect, as evidence, of the certificate, return and record of the surveyor general, or his deputy, is fixed and determined by the statute, and cannot be extended, limited, controlled, changed, or in any manner affected by agreement of the parties. *Second,* The surveyor general and his deputy are public officers, having certain fixed public and official duties to perform ; and any agreement of parties, the object of which is to stifle, shut out, or in any way exclude evidence of, or inquiry into the manner in which they have performed their duties, is, for obvious reasons contrary to public policy and void.

There is no express provision in this statute, or any other which has come to our notice, prohibiting the parties from making a stipulation of this kind. In the absence of express prohibition a party may waive a constitutional, as well as a statutory provision made for his benefit, where no principle of

Leighton v. Grant et al.

public policy is violated. (*Sedgwick on Stat. and Con. Law,*
109.) No law exists on our statute book requiring logs to be
scaled by a surveyor general, in order to make a valid sale
thereof. It was not necessary, therefore, that these parties
should have had the logs, which are the subject of this con-
tract, scaled by the surveyor general or his deputy; it was
competent for them to have stipulated that the quantity
should have been ascertained and determined by any other
person, and that the decision of such person should be final as
between them. (*Johnson vs. Howard, post, p.* 370 ; *Mon. Nav.
Co. vs. Fenton,* 4 *W. & S.* 205 ; *Faunce vs. Burke,* 16 *Penn. St.*
469 ; *Veazie vs. Bangor,* 51 *Maine,* 509.) The selection of the
surveyor general, or his deputy, as the scaler, was then a mat-
ter of convenience to the parties ; there is nothing upon the
face of the contract which indicates that the contract was
made for any other purpose. The object of this stipulation
was not to shut out, stifle, or in any way exclude evidence of,
or inquiry into the manner in which the surveyor general or
his deputy discharged their official duties, for that can be done
in a proper proceeding. It was merely to make conclusive, as
between them, the act performed for them by a public officer,
whom they were authorized to select as their agent, and
whose official acts, in the absence of evidence to the contrary,
are right. We see nothing in the stipulation which is contra-
ry to public policy, and are of opinion that it is valid and ef-
fective between the parties.

It appears from the testimony, that a settlement was made
on the 18th of March, 1871, for logs cut under the contract,
at which the plaintiff represented Stanchfield and Leighton,
and the defendants, Grant, McCaine & Co., were represented
by Daniel McCaine, one of the firm. The settlement was made
upon the certificate of John Lowell, deputy surveyor of logs,
dated Grindstone River, March 17, 1871, which was in evi-

dence, and showed that there were cut 16,172 logs, making 3,613,538 feet. The defendants, up to the time of the settlement, had paid Stanchfield & Leighton for cutting logs under the contract, in cash, $6,000, and upon settlement gave them four notes, all dated March 18, 1871; one note for $1,000, due in thirty days; one for $1,882.46, due in forty-three; two other notes, for the same amount, one due in 104 days after date, and the other 84 days after date. The note due in 104 days is the note upon which this action is brought. The logs cut by Stanchfield & Leighton for defendants, under the said agreement, were the sole consideration for these notes.

Upon the trial the defendants requested the court to instruct the jury as follows : " *First* : If the jury believe, from the evidence before them, that the amount of logs reported by the scaler, John Lowell, to have been cut by Stanchfield & Leighton for the defendants, under the agreement between them, was one million feet, or over, more than they in fact cut, their verdict must be for the defendants. *Second :* If the jury find from the evidence before them, that the defendants have, in fact, paid Stanchfield & Leighton, in cash, for all the lumber or logs actually cut by them, under the agreement between them, dated November 17, 1870, then their verdict must be for the defendants. *Third :* If the jury believe, from the evidence before them, that the quantity or amount of lumber or logs, returned by said Lowell as having been cut by Stanchfield & Leighton for defendants, upon which this settlement between them was made, was one million feet, or over, more than the amount actually cut by them, that is conclusive evidence of fraud, and their verdict must be for the defendants. *Fourth :* The stipulation in the contract, that the decision of the deputy surveyor in regard to the scale should be final, has reference solely to a fair and honest scale, and in case the jury find that this scale of Lowell is grossly erroneous, it is not

binding on the defendants, and it makes no difference whether such error arose from intentional fraud, from incompetency, or any other cause." The court refused each of these requests, and the defendants excepted thereto.

The answer of the defendants admits the making of the notes, upon which the action is brought, and the transfer of Stanchfield's interest therein to the plaintiff, but avers that such transfer was subsequent to the maturity of the note. It then sets up the agreement between Stanchfield & Leighton and the defendants, and alleges that said Stanchfield & Leighton cut, hauled, marked and banked, under and pursuant to the terms of the agreement, eleven thousand three hundred and thirteen logs, and no more; and that the same measured, board measure, two million three hundred and sixty-six thousand one hundred and fifty-four feet, and no more, amounting, at the price named in said agreement, to the sum of $8,281.53, and no more.

The answer further avers, that the logs were scaled and measured, under the direction of the plaintiff, Leighton, by a deputy of the surveyor of logs for the Stillwater district; that said deputy did not make a correct statement or account of the scaleage or measurement of said logs, but that the plaintiff, with the intent and design to cheat and defraud the defendants, and procure from them the notes in the answer described, one of which is the note in suit, did fraudulently induce and procure the said deputy to make and return to the said surveyor general, and to said defendants, a false and fraudulent statement and account of the scaleage and measurement of said logs, by which false and fraudulent statement and account the said logs were represented to scale and measure 3,613,538 feet, board measure, while in truth the real scaleage and measurement thereof was only 2,366,154 feet, board measure, as above stated.

The answer further alleges, that the plaintiff knowingly, willfully and fraudulently, and with the intent to cheat and defraud said defendants, and procure from them the notes aforesaid, falsely and fraudulently represented and stated to said defendants, that Stanchfield & Leighton had cut, marked, hauled and banked, under and pursuant to said agreement, 3,613,538 feet of logs, board measure, and, with like intent, falsely and fraudulently represented to the defendants that the said logs had been properly and accurately scaled and measured by a deputy of the surveyor general of logs for said Stillwater district, and that, by said measurement, the said logs measured and scaled 3,613,538 feet, board measure; and, with like intent, did produce to defendants the said false statement and account of the scaleage and measurement of said logs, so made by said deputy as aforesaid; and, with like intent, did knowingly, willfully and fraudulently state and declare to said defendants that the same was a true and fair statement and account of the scaleage and measurement of said logs; that the defendants, without having any knowledge or suspicion of the said fraudulent acts or designs of said plaintiff, or that said statements or representations so to them made by him, as aforesaid, were false, or that said statement or account of the said deputy surveyor of the scaleage of the said logs was false, or made with the intent to deceive or defraud said defendants, but believing the same to be true, and relying upon the truth thereof, did, on said 18th day of March, 1871, make, execute and deliver to said Stanchfield & Leighton, for and on account of the cutting, marking, hauling and banking of said logs, under said agreement, their certain four promissory notes, to-wit: the notes above described, one of which is the note described in the complaint on which this action is brought. The answer then alleges, that in truth Stanchfield & Leighton had not, nor had either of them, cut,

Leighton v. Grant et al.

marked, hauled or banked, under said agreement or otherwise, for defendants, 3,613,538 feet, nor any greater amount than 2,366,154 feet, and that the said logs so cut had not been properly or accurately measured by said deputy surveyor, and the said statement and account of said deputy surveyor, so produced by said plaintiff to said defendants, was not a true or correct statement of the scaleage or measurement of said logs, as said plaintiff then and there well knew; and that, save and except as above stated, the note upon which this action is brought is wholly without consideration, and is fraudulent and void, as said plaintiff well knew.   The answer then alleges that on divers days, between the first of January, 1871, and the 18th of March, 1871, the defendants paid Stanchfield & Leighton, for and on account of the logs cut under said agreement, divers sums of moneys, amounting in all to six thousand dollars, and that they, without any knowledge or suspicion of said fraudulent acts or designs of said plaintiff, or that the said statement or account of said deputy of the measurement and scaleage of said logs was false, or that any of the said statements or representations, so made to them by said plaintiff, were untrue, paid to Stanchfield & Leighton the first two notes, when they became due, and also, on the 12th of August, 1871, paid upon the note, upon which this action is brought, interest to the amount of $93.12, and on the note due 84 days after date, principal and interest, $205.88, making in all paid upon said logs, $9,182.46, being nine hundred dollars more than was actually due them therefor.

It appears from the answer that the four notes were given by the defendants for the general balance which, upon the accounting, as it transpired, appeared to be due to Stanchfield & Leighton.   It also appears therefrom that there was in fact due to Stanchfield & Leighton at the time of the settlement a

balance of $2,281.53; this balance, existing at the time, entered as consideration into all the notes, and constituted a valuable consideration for each of them; the subsequent payments on account could not affect the consideration of the notes or either of them. The consideration admitted being a valuable one, and, as to the notes referred to, not susceptible of apportionment, the note in suit cannot, in the absence of fraud or mistake, be impeached for a partial want or failure of consideration. (*Walters vs. Armstrong*, 5 *Minn.* 448; *Whitacre vs. Culver*, 9 *Id.* 295; 1 *Story's Eq. Jur. sec.* 244, *note* 5; 1 *Parsons on Notes and Bills*, 207.) The second instruction submitted by the defendants was therefore properly refused.

The defense set up in the answer is fraud. The facts stated in the answer constitute a case of gross positive fraud upon the part of Lowell, the deputy surveyor general, who surveyed the logs in question, and the plaintiff, Leighton, perpetrated with the express design of procuring these notes. The answer leaves no room for inferring a mere mistake or error, gross or slight, upon the part of either of these persons.

It is an established doctrine of the courts of equity, that where a bill sets up a case of actual fraud, and makes that the ground of the prayer for relief, the plaintiff is not, in general, entitled to a decree, by establishing some one or more of the facts, quite independent of fraud, but which might of themselves create a case under a distinct head of equity from that which would be applicable to the case of fraud, originally stated. (1 *Dan. Ch. Pl. and Pr.* (*Perkins' Ed.*) 335-6; *Wilde vs. Gibson*, 1 *H. L. Cas.* 605; *Eyre vs. Potter*, 15 *How.* 42, 56; *Fisher vs. Boody*, 1 *Curtis C. C. Rep.* 211; *Tillinghast vs. Champlin*, 4 *R. I.* 173; *Williams vs. Sturdevant*, 27 *Ala.* 599.) This is not in conflict with the rule, that in a bill alleging fraud, the facts may be of such a character, and be so stated, that relief may be granted on the ground of a gross mistake. (See

Leighton v. Grant et al.

*Daniel vs. Mitchell,* 1 *Story's Rep.* 173 ; *Kerr on Fraud and Mistake,* 367, *note.*) If this be the rule applicable in courts of equity, the necessity for its application to defenses in actions at law is quite as apparent.

The first and third instructions, requested by the defendants, required from the jury a verdict in their favor, if the jury should find that the amount of logs returned by Lowell, the deputy surveyor general, upon whose return the settlement was made, was, *in fact,* one million feet, or over, more than the amount actually cut by Stanchfield & Leighton ; and the fourth instruction avoids the stipulation in the contract, that the decision of the deputy surveyor in regard to the scale of the logs should be final between the parties, and authorizes the jury to disregard his measurement of the logs, if they should find it to be grossly erroneous for any reason.

Under these instructions it was altogether immaterial whether the over-measurement was found by the jury to be fraudulent, or a mere mistake, without fault or negligence, *in fact,* upon the part of either Lowell or the plaintiff. This being the effect of the instructions, they were entirely too broad, and under the rule above laid down, were erroneous, unless the over-measurement alluded to was conclusive evidence of fraud. There is a marked distinction between negligence and fraud. " In the first, there is no positive intention to do a wrongful act ; but in the latter, a wrongful act is ever designed and intended. Negligence may be sufficient evidence of fraud, but is not conclusive evidence thereof." *Gardner vs. Heartt,* 3 *Den.* 236 ; *Wilson vs. York and Maryland L. R. R. Co.,* 11 *Gill & J.* 58, 79 ; *Goodman vs. Harvey,* 4 *Ad. & El.* 870 ; *Uther vs. Rich,* 10 *Id.* 784 ; *Shearman and Redfield on Neg.,* § 3.

The instructions were therefore properly refused. The order denying a new trial is affirmed.