UNITED STATES *v.* HILL and others.[1]

*(Circuit Court, D. Massachusetts.* November 14, 1885.)

CLERK OF DISTRICT COURT — RETURN OF NATURALIZATION FEES — REV. ST. §§ 828, 833.

Amounts received by the clerk of the district court of the United States for the district of Massachusetts for the naturalization of aliens in that court are not fees and emoluments within the meaning of Rev. St. § 833, and the clerk is not bound t include them in his half-yearly returns.

At Law.

*Charles Almy, Jr.,* Asst. U. S. Atty., for plaintiff.

*John Lowell,* for defendants.

Before COLT and NELSON, JJ.

NELSON, J. This is an action upon the bond given by the defendant Hill, as the clerk of the United States district court of this district, and is submitted to the decision of the court upon an agreed statement of facts, the material parts of which are as follows: The defendant Hill was appointed clerk of the district court on the fifth day of February, 1879, and duly qualified as clerk, and the defendants gave the bond, a copy of which is annexed to the declaration. As clerk he has made half-yearly returns of fees and emoluments received by him, but he has not included in the same the amounts received by him for the naturalization of aliens in the district court. It has been the custom in the United States courts in this district, for a long time, not less than 45 years before the date of the writ in the present action, and known and approved by the judges, for the clerk to charge one dollar as a fee for a declaration of intention to become a citizen, and two dollars as a fee for a final naturalization and certificate thereof; and the clerk of the district court has never included these in the fees and emoluments returned by him, and this has been known to the judges, to whom the accounts have been semi-annually exhibited, and by whom they were passed without objection in this particular. Following this custom, and believing and being informed that these fees formed no part of the emoluments to be returned to the government, the defendant Hill has not included these amounts in his accounts, and this was known to the judge when his accounts were examined, and he made on each the certificate required by law: and his accounts so made up to July 1, 1884, have been examined and adjusted by the accounting officers of the treasury department. The clerks of the several courts of the state of Massachusetts made similar charges for like services, and made no returns to the treasurers of the counties of the fees so received until the passage of the statute of the state of 1879, *c.* 300. Section 833, Rev. St., reads as follows:

"Every district attorney, clerk of a district court, clerk of a circuit court, and marshal shall, on the first days of January and July in each year, or within thirty days thereafter, make to the attorney general, in such form as he may prescribe, a written return for the half year ending on said days,

[1] Affirmed. See 7 Sup. Ct. Rep. 510.

respectively, of all the fees and emoluments of his office, of every name and character, and of all the necessary expenses of his office, including necessary clerk hire, together with the vouchers for the payment of the same for such last half year. He shall state separately in such returns the fees and emoluments received or payable under the bankrupt act; and every marshal shall state separately therein the fees and emoluments received or payable for services rendered by himself personally, those received or payable for services rendered by each of his deputies, naming him, and the proportion of such fees and emoluments which, by the terms of his service, each deputy is to receive. Said returns shall be verified by the oath of the officer making them."

The position of the government is that the sums received from naturalization were "fees and emoluments," within the meaning of section 833, which the clerk was bound to include in his returns. The ground taken is that these sums were charged and received for services rendered by the clerk in his official capacity, and he is therefore bound to account for them, whether they were chargeable under section 828, which prescribes the fees of the clerks, or not.

To determine the soundness of this proposition it is necessary to recur to former as well as to the existing legislation of congress upon the subject, and especially to the action of the courts and of the executive departments of the government. By the act of March 3, 1791, (1 St. 217, § 1,) the compensation of the clerks was fixed at five dollars a day for attending court, and their travel. To this was added, by the act of May 8, 1792, (1 St. 277, § 3,) such fees as were allowed in the supreme courts of the state, with a provision that for discharging duties not performed by the clerks of the state courts, and for which the laws of the state made no allowance, the court might allow a reasonable compensation. Under these acts the clerks were allowed to retain all their fees, and were not required to render any account of them to the government. The first law requiring returns to be made was the act of March 3, 1841, (5 St. 427.) This act established the compensation of clerks of courts at $4,500 a year, above clerk hire and office expenses, payable from fees only, and required them to pay the overplus into the public treasury, under such rules and regulations as might be prescribed by the secretary of the treasury. The next in order of time was the act of May 18, 1842, (5 St. 483.) That act required the clerks to make to the secretary of the treasury semi-annual returns, embracing all the fees and emoluments of their office, of every name and character, distinguishing those received or payable under the bankrupt act from those received or payable for any other services. It authorized the clerk of the district court to retain from the fees and emoluments of his office, above office expenses and clerk hire, as his personal compensation, $3,500 a year, and required him to pay the surplus into the treasury. It has been stated that the provision in this act as to bankruptcy fees was inserted to change the law, as ruled by Judge STORY, that under the act of March 3, 1841, the clerks were not bound to account for fees earned under the bankrupt act of August 19, 1841. The act of March

3, 1849, (9 St. 395, § 4,) establishing the department of the interior, transferred the supervision of the accounts of clerks to the secretary of the interior. Until the act of February 26, 1853, (10 St. 161,) the official fees of the clerks remained, in substance, as fixed by the acts of 1791 and 1792. The act of 1853 was the first uniform statute regulating the fees of the clerks and other officers of the courts throughout the United States. It established the present fee-bill, and is reproduced in sections 823–857, Rev. St. Its provisions in regard to returns to be made by the clerks were the same as in the act of 1842, except that they were to be made to the secretary of the interior, as directed by the act of 1848, instead of to the secretary of the treasury. Since the act of June 22, 1870, creating the department of justice, the returns have been made to the attorney general, and supervision of these accounts has been exercised by that officer of the government.

Upon an examination of the statute it will be seen that it applies to taxable costs in all ordinary litigation, whether at law or in equity or admiralty, and undoubtedly governs the taxation in all such actions, suits, and proceedings, civil and criminal, *in personam* and *in rem*, in the courts of the United States. But it has not usually been considered, at least in this district, as applying to certain special and peculiar cases, of which the courts have jurisdiction, where only the party asking for the right or privilege is before the court, and from the nature of the case, no costs are taxable as in ordinary litigated suits. Of such a character are proceedings under the naturalization laws, under the shipping commissioner's act, and applications to be admitted to practice as an attorney. Thus Judge SHEPLEY early refused to allow the clerk to tax costs by the fee-bill on applications under the shipping commissioner's act of June 7, 1872, (17 St. 272; Rev. St. § 4554,) for the money and effects of deceased seamen deposited in the circuit court by the shipping commissioner.

In respect to naturalization cases, it has never been hitherto understood, either by the judges or the departments, that the fees of the clerk were for services rendered in his official capacity. At times, especially before elections, these applications are extremely numerous. The papers are usually prepared by the parties themselves or their friends, or more frequently by agents of candidates. The hearings are *ex parte*, at no stated times, and it is rare that any person appears in opposition. It has therefore been necessary, both in the interest of the applicants, and for the due and orderly execution of the law, and to enable the court to dispose of the cases, that the papers should be looked over and corrected by some person familiar with the law and practice, and in many instances that the witnesses should be examined before the cases were presented to the court for final action. It was for this service that the clerk has been allowed to make these charges to the parties. These are duties which the court has the undoubted right to have performed by some

other person than the presiding judge. In these cases, the clerk acts rather as a person appointed to assist the court in exercising its functions, like a master or examiner in an equity cause, or an assessor in admiralty, or an auditor in a suit at law. It is the universal practice of all courts of large jurisdiction to appoint special officers, at the expense of the parties, to make inquiries, investigate details, examine papers, take accounts, make computations, and perform ministerial acts. Their reports, when returned into court and accepted, become part of the case, and form the basis of the orders and decrees of the court in the cause. It was with this view, to regulate the practice in naturalization cases, and define the duties required of the clerk, that Judge SPRAGUE, in 1855, adopted the following rules, which have ever since been in force:

Ordered, by the court, that applications by aliens to be admitted to become citizens of the United States shall be presented to the court while in session, and that proof of the facts whereof the court is required by law to be satisfied, shall be made by at least two credible and disinterested witnesses, who are citizens of the United States, to be produced and examined in open court.

Ordered, that before such applications are presented all necessary papers shall be filed with the clerk, who shall report to the court when the application is made, that he has examined the same, and whether they are all in due form and in conformity with the requirements of law, or how otherwise.

It is for services rendered under these rules, and as a special officer of the court, and not as clerk, that these fees have been permitted. They were not duties pertaining to the office of clerk. They could as well have been performed by any other person designated by the court for the purpose; as by the district attorney, or a commissioner of the circuit court, or an attorney, or any suitable person not an officer of the court.

Reference has been made to the circular of Attorney General Devens of January 14, 1879, issued to the clerks. In it he says, referring to section 833:

"This language embraces every possible fee or emolument accruing to you by reason of your official capacity, and does not allow the withholding of any. Whatever is done by you that you could not do if out of office has an official color and significance that brings it within the compass of the language of the statute."

This is undoubtedly a forcible and accurate statement of the meaning of the statute. But the naturalization fees do not come within this rule. They did not accrue to the clerk by reason of his official capacity, and were for work which might as well have been done by him when out of office as when in. It is also to be noticed that this circular calls upon the clerks for "a statement of sums received for searches, for all copies for naturalization papers and oaths, and all other sums received through your office," but makes

no mention in terms of naturalization fees. Reg. Dep. Just. 1884, p. 223.

No complaint of these fees has ever come to the ear of the court from any quarter. On the contrary, this service performed by the clerks has been of great advantage to those seeking to be admitted as citizens. It has had the effect, as originally intended, to simplify the process of becoming a citizen, and to make it more expeditious and inexpensive. It saves the parties the expense of employing an attorney, and the fee charged therefor is much less than would be allowed by the fee-bill, if the application is to be treated and entered on the docket of the court as an ordinary suit. In rejected cases, no fee has been charged. This practice has prevailed for more than 40 years, ever since the act of 1841, which first required returns, and has been perfectly well known to everybody conversant with the courts. It was begun by Judge STORY and Judge SPRAGUE, and has had the approval of all the judges of this district since their day. It has also had the sanction, successively, of the department of the treasury, the department of the interior, and the department of justice. Until this suit was brought, it has never been called in question by any accounting officer of the government. Nor has congress seen fit to put a stop to it by legislation. This construction of the statute in practice, concurred in by all departments of the government, and continued for so many years, must be regarded as absolutely conclusive in its effect. *Edwards's Lessee* v. *Darby*, 12 Wheat. 206; *U. S.* v. *Temple*, 105 U. S. 97; *Ruggles* v. *State*, 108 U. S. 526; S. C. 2 Sup. Ct. Rep. 832; *U. S.* v. *Graham*, 110 U. S. 219; S. C. 3 Sup. Ct. Rep. 582.

It was stated at the bar that a bill was introduced into the last congress to require the clerks to make returns of all fees which they should receive for naturalizations, and as masters and commissioners, but failed to become a law. If a change in the practice should be thought desirable, it is obvious that it should be made by congress and not by the courts.

It is also to be noticed as significant that the clerks of the courts of Massachusetts, under a fee-bill much like ours, and a statute requiring them to make to the county treasurer yearly a return "of all fees received by them for their official acts and services," were never required to include in their returns the fees received in naturalization cases. Rev. St. 1836, *c*. 88, § 15; Gen. St. 1860, *c*. 121, § 22. This was changed by the act of 1879, *c*. 300, which defined what the fees in such cases should be, and directed the clerks to include them in their returns.

The decision of the court is that upon the agreed facts in the case this action cannot be maintained. Judgment for defendants.