COUNTY OF HENNEPIN v. WALTER A. RYBERG AND ANOTHER.[1]

September 17, 1926.

No. 25,524.

**Retention of one-half of naturalization fees by clerks of court.**

Since the enactment of the Uniform Naturalization Law by Congress in 1906, the clerks of court have retained as their own the half of the fees collected by them in naturalization proceedings and not accounted for to the Bureau of Immigration and Naturalization. Immediately after the passage of the act, the then attorney general of the state ruled that they were entitled to do so. That ruling has been acquiesced in up to the present time by the executive department. It has been recognized and assumed correct by the legislature. That construction of state law, having continued for 20 years, is controlling and the courts should not now depart from it even though, to start with, they might have come to a contrary opinion.

Clerks of Courts, 11 C. J. p. 871 n. 6.
Statutes, 36 Cyc. p. 1140 n. 64; p. 1141 n. 66; p. 1142 n. 80.

[1]Reported in 210 N. W. 105.

Action in the district court for Hennepin county for an accounting for fees received by the defendant clerk of the district court. There was judgment for defendants, Salmon, J. Plaintiff appealed. Affirmed.

*Floyd B. Olson*, County Attorney, and *A. C. Lindholm*, Assistant County Attorney, for appellant.

*Robertson & Bonner*, for respondents.

STONE, J.

Action for an accounting, the purpose being to recover from the clerk of court of Hennepin County fees which he has received in naturalization proceedings over a long period of years. The plaintiff contends that such fees are required by law to be paid into the county treasury. Defendant clerk of court and the surety on his official bond, the Hartford Accident & Indemnity Company, claim on the other hand that the fees belong to the clerk personally. Judgment went for defendants on the pleadings and plaintiff appeals.

The fees have been paid and received under the Act of Congress of June 29, 1906, entitled "An act to provide for a uniform rule for the naturalization of aliens throughout the United States." (34 St. 596). After prescribing the fees in naturalization proceedings, the act, in the fourth paragraph of section 13, provides that the clerk collecting such fees "is hereby authorized to retain one-half * * *; the remaining one-half * * * shall be accounted for in their quarterly accounts, which they are hereby required to render the Bureau of Immigration and Naturalization." On the point here involved, that law did not receive construction at the hands of the Supreme Court of the United States until 1913, when it was dealt with in Mulcrevy v. City and County of San Francisco, 231 U. S. 669, 34 Sup. Ct. 260, 58 L. ed. 425. It was there held that the act did not touch "the relations of a state officer with the state." The court said: "The act is entirely satisfied without putting the officers of a state in antagonism to the laws of the state—the laws which give them their official status. It is easily construed and its purpose entirely accomplished by requiring an accounting of one-half of the fees to the United States, leaving the

other half to whatever disposition may be provided by the state law."

In the meantime the question of the title to the fees retained by the clerk, with the express authority of the naturalization law, had given rise to a marked contrariety of judicial opinion. On the one hand it was held that inasmuch as in naturalization proceedings the clerks of state courts functioned as agencies of the Federal government, the state laws dealing with their fees and referring to compensation for official services rendered the state and its citizens had nothing to say to the subject, and that the clerks properly retained as their own the half of the fees which the Federal law said they might retain. State ex rel. v. Quill, 53 Ind. App. 495, 102 N. E. 106; Hampden County v. Morris, 207 Mass. 167, 93 N. E. 579, Ann. Cas. 1912A, 815; Fields v. Multnomah County, 64 Ore. 117, 128 Pac. 1045, 44 L. R. A. (N. S.) 322; Eldredge v. Salt Lake County, 37 Utah, 188, 106 Pac. 939.

Other courts held that the clerks were still state officers and their courts state courts; that the state laws regulated all their functions and required them to accept their salaries as compensation for all services of whatsoever character and to account and pay over to the state their fees in naturalization proceedings. San Francisco v. Mulcrevy, 15 Cal. App. 11, 113 Pac. 339; Franklin County v. Barnes, 68 Wash. 488, 123 Pac. 779; Barron County v. Beckwith, 142 Wis. 519, 124 N. W. 1030, 30 L. R. A. (N. S.) 810, 135 Am. St. 1079. Considering the decision of the supreme court decisive of the whole question, the supreme judicial court of Massachusetts reversed Hampden County v. Morris, supra, in Berkshire County v. Cande, 222 Mass. 87, 109 N. E. 838. We are not required here to review these cases and choose between their opposed principles of decision, for there is another which must control this case.

The naturalization law had not been long in force when on December 3, 1906, Hon. Edward T. Young, then attorney general of Minnesota, was called upon for an opinion on the subject. It was addressed to Hon. P. M. Kerst, then public examiner. Section 2721, R. L. 1905 (G. S. 1923, § 7018), was in effect and provided that

every officer of the state receiving a fixed salary should be entitled to 'no' other compensation. Mr. Young's opinion was in part as follows:

"I beg to advise you that, in my opinion, Section 2721 of the Revised Laws' was intended to apply only to duties performed under state laws. The duties in relation to naturalization are imposed by federal law, and any compensation derived therefrom is received under a federal law and is not in my opinion, in any manner affected by any law of this state. It follows that such fees may be received and retained by the clerk of the district court in Hennepin County without violating any law of this state."

Succeeding attorneys general have never departed from that view. Aside from the instant case, not more than one other county attorney, so far as we have been advised, has ever taken issue with it. There is no evidence that the executive department, from the Governor to county commissioners, has ever disagreed. Mr. Kerst, public examiner in 1906, and all of his successors in office have governed themselves accordingly.

The question has been presented to the district court but once and never before to this court. Prior to 1912, in a mandamus proceeding, the right of the clerk of court of Otter Tail county to retain naturalization fees was challenged. The issue was decided for the clerk by Judge Taylor, then one of the judges of the Seventh judicial district. One of the grounds of his decision was stated thus:

"The services in question were not performed for the State of Minnesota nor pursuant to the laws of the State of Minnesota, but for the United States and under and pursuant to the laws of the United States. They were wholly outside the duties imposed upon the clerk by the state laws, and, in my opinion, the fees allowed for such services are not within the purview of the State Laws above cited and the clerk was entitled to retain them."

The construction put upon the act of Congress by the Mulcrevy case is of course binding upon us. But in the construction of our

own statutes it helps only to the extent of saying that those statutes can do as they please with the half of naturalization fees not paid over by the clerk to Federal authority. The question remains, what do our laws say on the subject? The county attorney claims the benefit of the general statutes and cites Sp. L. 1891, p. 987, c. 373; L. 1903, p. 660, c. 365; L. 1907, p. 524, c. 372; L. 1913, p. 641, c. 440; L. 1919, p. 19, c. 18; and finally L. 1921, c. 133. He takes position finally on G. S. 1923, § 7018, which reads:

"Unless otherwise provided by law, every county official in the state of Minnesota receiving a stated salary shall receive the same in full compensation for all services and expenses whatsoever, and shall, on the first Monday of each month, file with the county auditor a correct statement of all fees received by him, and turn the same into the county treasury."

Defendant insists that the general laws have no application to the clerk of court of Hennepin county and, referring to much special legislation and its history, proceeds with an argument, not necessary to be followed here, to the effect that there is no statute requiring the clerk of court of Hennepin county to account for naturalization fees.

The foregoing shows that to start with, and at least until the decision of the Mulcrevy case in 1913, there existed much uncertainty as to the proper solution of the question now before us. Clearly, in naturalization proceedings, the clerk of a state court functions as an agency of the Federal government and the Federal law says he may retain half of the fees. The services compensated by those fees are not rendered for the state and there is ground for holding, as has frequently been held, that statutes such as G. S. 1923, § 7018, providing that official salaries shall be in "full compensation for all services and expenses whatsoever" refer only to services rendered and expenses incurred by the officer in his capacity as a state and county officer, and in the performance of his duties to the state or county and not for services rendered under Federal Law. The existence originally of ambiguity and difficulty cannot be denied. Solution of the problem was helped by the decision in the Mulcrevy

case only to the extent of its declaration that state law may control the disposition of the fees retained by the clerk. That declaration does not go very far, however, in aiding the determination whether a given state law appropriates such fees for the state or leaves them to the clerk. That question remains notwithstanding the Mulcrevy decision and that is the one now before us.

It would be difficult for fancy to state a more appropriate case for the application of the rule of practical construction. The practical interpretation of our state law was first formulated by Attorney General Young in 1906, immediately after the enactment of the Uniform Naturalization Law. The extent to which it has been acquiesced in by the executive department of state and county government has been stated. It remains to show that the acquiescence of the legislature, during the period of 20 years which has lapsed, is just as marked. It may well be doubted whether one legislature has any power to place upon the acts of its predecessor a construction which will be binding. But the understanding of old laws by the lawmakers and their acquiescence in a given status assumed to have been created thereby is not only frequently for judicial consideration but also and occasionally of great if not controlling importance. It would have been easy for the legislature at any time, since it was apparent in 1906 that the executive department was not disposed to question the retention of naturalization fees by clerks of court, to have made a very definite law on the subject, putting at rest the right of the counties to those fees. Not only has no such act been passed but we find two statutes, since enacted, which indicate affirmatively, not only the acquiescence of the legislature in the retention of the fees but also an expression of legislative will that the practice should continue.

One of those laws is L. 1911, p. 116, c. 97, which provided for the return to clerks of court by county treasurers, of naturalization fees paid into the county treasury "by mistake" between November 13, 1906, and March 22, 1909. Another such law is L. 1921, p. 535, c. 355. It has to do with the compensation of clerks of court in counties having more than 60 and less than 80, townships, there being

also a restriction as to population. The act provides that the compensation of the clerks "shall remain as fixed by law, except that . no fees from any source except those received for naturalization papers and work on the Board of Audit shall be retained by such clerk as a part of his compensation, but all other fees collected by him shall be paid into the county treasury." These laws are not only a legislative declaration of what the law should be, but also an expression of legislative opinion as to what it was and had been with respect to the title of clerks of court of this state to fees collected in naturalization proceedings.

So, if we were now to adopt the view that the law is and since 1906 has been that the fees in question belong not to the clerks but to the counties, we would be overturning a settled conviction as to what the law is which has prevailed throughout the executive and legislative departments of the state government for 20 years and has been once concurred in by the judicial department. There was clear ambiguity to start with, a patent uncertainty *under state law* of the effect of the declaration by Congress that the clerks of state courts might retain the fees, which has been subjected to the practical construction and settled opinion just referred to. It would be utterly presumptuous for the courts at this day, even though they might have reached the contrary opinion to start with, to disagree with that conviction, settled and effective for 20 years. Such a judicial reversal of settled executive opinion and policy would be particularly objectionable in view of their clear approval by the legislative department, expressed not only by acquiescence but also by explicit recognition and confirmation. For judges to reverse or nullify such a clear executive and legislative decision of such long standing, would be to destroy confidence not only in the certainty of law but in official action thereunder. That is one of the disastrous results frequently prevented by the doctrine of practical construction. It is a rule of such clear sanity and practical wisdom that it may control the construction of constitutions as well as statutes. City of Faribault v. Misener, 20 Minn. 347 (396).

For subjecting this case to decision by the rule of practical construction we have exact precedent in U. S. v. Hill, 120 U. S. 169,

7 Sup. Ct. 510, 30 L. ed. 627. It was a suit to recover of the clerk of the United States district court for the district of Massachusetts a large sum in naturalization fees which he had collected, but which he had not included in his returns of "fees and emoluments" to the government. Judgment in the circuit court went for defendant. 25 F. 375. It was affirmed by the Supreme Court.

The practice involved, of the retention of naturalization fees by clerks of the United States district courts, had continued for more than 40 years. The Supreme Court, after referring to that circumstance, said, its language almost equally applicable to the instant case:

"A court seeking to administer justice would long hesitate before permitting the United States to go back, and not only as against the clerk, but as against the surety on his bond, reopen what had been settled with such abundant and formal sanction. This principle has been applied, as a wholesome one, for the establishment and enforcement of justice, in many cases in this court, not only between man and man, but between the government and those who deal with it, and put faith in the action of its constituted authorities, judicial, executive, and administrative."

The judgment appealed from is right and must be affirmed. So ordered.

WILSON, C. J. (dissenting.)

I dissent because:

(1) Of Board of Co. Commrs. of Hennepin County v. Dickey, 86 Minn. 331, 90 N. W. 775. If there was a silent, unconscious acquiescence no one was misled. It was not like a case where property rights or titles are affected and practical construction is invoked to protect innocent acts. Here the official is merely keeping money not his.

(2) In my opinion the acts of the public officials from the passage of the act of Congress in 1906 to the decision in the Mulcrevy case in 1913 are insufficient to invoke or support the application of the doctrine of practical construction. That decision eliminated

the ambiguity in the congressional act which must always exist as a basis for the application of this doctrine. Ambiguity in our statute never existed. The decision in the Mulcrevy case was controlling and all of the official acts referred to in the opinion which occurred after that decision are inconsequential. Practical construction precedes but does not follow judicial interpretation.