## STATE EX REL. WILLIAM S. ERVIN v. CROOKSTON TRUST COMPANY.[1]

November 10, 1938.

No. 31,768.

*W. A. Marin* and *Rollin L. Smith,* for appellant (respondent below).

*William S. Ervin,* Attorney General, and *Harry W. Oehler,* Assistant Attorney General, for respondent (relator below).

[1]Reported in 282 N. W. 138.

Holt, Justice.

The attorney general in behalf of the state proceeds against respondent by *quo warranto.* The information alleged that on January 16, 1917, respondent, organized under the laws of this state, was licensed to operate thereunder as a trust company; but that contrary to the laws of the state relating to both banks and trust companies respondent has a place of business in this state at Crookston "where credits are opened by the deposit of money and currency, subject to, and are being paid and remitted on draft, check and order." Respondent's demurrer to the information was overruled. Respondent answered admitting its incorporation and doing business, but denied that it did business contrary to the laws of the state, and further alleged that under the general laws of the state pertaining to the organization and operation of trust companies it was formed January 16, 1917, setting out a paragraph of its articles of incorporation relating to the nature of its business, virtually in the words of the statute, and alleged that it has confined its business strictly within limits fixed by its articles of incorporation. It also alleged that ever since its organization it has accepted deposits of money and currency and has paid out said deposits by check, draft, or order and has done so by reason of the fact that the statutes of the state pertaining to trust companies have been construed by the various attorneys general and the banking department of the state for a long term of years as giving to trust companies the legal right and power to accept such deposits of money and currency and pay out the same by check, draft, or order. It also averred that since the enactment of L. 1883, c. 107, and acts amendatory thereof, trust companies were organized and, until the bringing of this action, they, as a common practice and under the rulings of the attorneys general and the state banking department, have received money and currency on deposit and have paid out the same by check, draft, or order for a period of 50 years, and there has therefore been such practical construction of the statutes as to preclude the state from now questioning such construction. The answer also alleged that before respondent organized it requested the opinion of the banking department of the state as to the right

of trust companies so to receive and pay out deposits, and received from it copies of the opinions of various attorneys general that the statutes so permitted. It further alleged that since its organization it has been periodically examined by the banking department as required by law, and said department has at all times had full knowledge that respondent did receive deposits of money and currency and paid out the same by check, draft, or order, and with such knowledge has acquiesced in that practice. The answer also averred that since respondent's organization it has always complied with and continues to comply with 2 Mason Minn. St. 1927, § 7680, and now, after respondent has expended considerable money in a banking house, fixtures, and equipment necessary to carry out the powers of a trust company in accordance with the interpretation placed on the statutes by executive powers of the state, to terminate its existence would work injustice and prejudice to persons who have acquired property rights because of such interpretation and practice. The answer also sets forth that the proceeding was instigated by improper motives of a named person politically prominent who is in control of the two banks at Crookston, and that respondent has twice applied to the state securities commission for permission to amend its articles of incorporation so as to conduct a general banking business, but the same person has successfully opposed respondent's application. Relator's demurrer to the answer was sustained, and respondent appeals.

The power or authority granted respondent insofar as receiving commercial deposits, if it exists at all, is to be found in 2 Mason Minn. St. 1927, § 7732, reading:

"It may take and hold on deposit or for safe-keeping money, bonds, stocks, and other securities or personal property which any public officer, or any trustee or other legal representative or any public or *private corporation or person may desire* or shall be authorized, ordered, or otherwise required by law to deposit in a bank or other safe depository, or to pay into any court of record; and the same may, instead thereof, be paid into or deposited with any such trust company, and, where the deposit is made pursuant

to order of court, in such as the court shall designate, and take the receipt of such trust company therefor; and thereupon the depositor and his sureties shall be relieved from liability thereafter accruing so long as such deposits continue."

The here important words are those we italicized in the section. This was the law in force when respondent organized, and has been substantially the same since L. 1883, c. 107, was amended by L. 1885, c. 3. The wording of the amendment of 1885 did not clearly exclude the acceptance by trust companies of the ordinary commercial deposits, and the law as it was and has been since respondent's organization, from the words above cited italicized (§ 7732), might readily be construed as so empowering. In that situation the courts generally hold that the practical construction put on the statute by the authorities charged with its administration during a long period of time, known to the legislative department and no effort made to change the statute, should not be set aside by the courts. There is no need to cite authorities, federal or state, on the proposition, for in County of Hennepin v. Ryberg, 168 Minn. 385, 210 N. W. 105, it is exhaustively treated.

Relator, however, contends that respondent's powers are restricted by § 7740 of the Code, which provides that a trust company "shall not engage in any banking, mercantile, manufacturing, or other business, except such as is herein expressly authorized for such a corporation." In that connection § 7635 is properly pointed to, which defines banks and trust companies. But it is obvious that the powers of banks, mercantile and manufacturing corporations, and trust companies do overlap or are the same as to many details of their business. Hurley v. Markville State Bank, 185 Minn. 56, 239 N. W. 769, may be cited as an instance of overlapping; but of course relator may truly say that banks are granted greater powers than trust companies (Code, § 7660). However, there can be no doubt that § 7732 empowers a trust company to receive deposits of moneys in the capacity of trustee, or under order of court, or from depositories, thereby establishing the relation of creditor and debtor between the depositor and the trust company. There cer-

tainly must exist as incidental to that relation the powers of the trust company to pay back in money or any other medium as the parties may agree, be it check, order, or draft. Illustrative of this proposition is People v. Binghamton Trust Co. 139 N. Y. 185, 34 N. E. 898. Relator frankly concedes that notwithstanding the restricted or limited grant of powers to trust companies, this rule of law, expressed and fortified with many cited authorities in Jones v. First Minneapolis Trust Co. 202 Minn. 187, 194, 277 N. W. 899, 903, should be applied to them:

"The controlling principle is that a corporation has only the powers and capacities expressly granted to it by law, or incidental to its existence or necessary to the exercise of its express powers."

Since the power of receiving trust funds is expressly granted, the incidental power of returning or paying the depositor is necessarily implied, though the medium by which it may be done is not specified. However, it is not the power of a trust company employing a bank's customary way of permitting the depositor to withdraw the deposit by means of check, draft, or order that is here the pivotal question; but the power and authority of a trust company to receive deposits of private persons and corporations who desire so to dispose of their own funds. Aside from statutes cited, relator, in its commendably terse brief, relies on Jones v. First Minneapolis Trust Co. *supra,* and Kelly v. First Minneapolis Trust Co. 178 Minn. 215, 226 N. W. 696. Both of these cases dealt with the power granted a trust company to deal with or invest trust funds intrusted to it, and it was held in the Kelly case that it had no power to buy from itself securities which it owns for an estate which it holds in trust; and in the Jones case that, as to trust funds held by it, where the trustor had made no specific direction respecting the securities in which the fund was to be invested, the trust company must invest in the securities authorized by the statutes, and corporation stock was not authorized securities. The proposition here was not involved in either case. The thought is advanced that if trust companies are permitted to receive commercial deposits the same as banks it tends to weaken them and en-

danger the trust funds in their custody, since they are limited in their investments and resources. The like and other arguments are for the legislature, not for the courts. We are of the opinion that if respondent can establish its allegations that the state attorneys general and its banking department, charged with the enforcement of the laws dealing with banks and trust companies, have, ever since they were permitted to organize, construed the statutes creating them authorizing their receiving money and currency for deposit subject to check from private parties, it has established a good defense.

(In this connection attention might be called to the fact that respondent in its brief refers to the opinions of the attorneys general by date and name. None of these are found published. An opinion of Assistant Attorney General Flannery is found as No. 19 in the Opinions of the Attorney General for the years 1916 and 1917, but is under date of May 4, 1916, and not December 26, 1916, as stated in the brief, and is diametrically opposed to that asserted by respondent. But this is a matter of evidence for the trial.)

The averment that respondent has at all times maintained the surplus required by § 7680 may not suffice as a defense, but such compliance may be considered in connection with the practical construction pleaded. At least the averment does not make the answer vulnerable to demurrer.

We do not understand that respondent claims to have the rights obtainable under § 7651, nor that it has succeeded in receiving all the powers of a state bank under L. 1929, c. 90.

It seems that in *quo warranto* improper motives may lead to denial of relief even though the relator be the attorney general. State ex rel. Douglas v. School District, 85 Minn. 230, 88 N. W. 751. So that defense may not be disposed of by demurrer.

Our conclusion is that relator's demurrer to respondent's answer should be overruled.

Order reversed.