JOB CRANSON v. JOHN T. SMITH.

*Patent Right Notes—Comp. L., §§ 1565-6 unconstitutional—Punishment of Fraud.*

Where any right or privilege is subject to the regulations of Congress, it is not competent for State laws to impose conditions which shall interfere with the rights or diminish their value.

The Michigan statute (Comp. L., §§ 1565-6) imposing unusual conditions on the transfer of patent rights by requiring notes given therefor to show it, and making it a misdemeanor to take or transfer them otherwise, is unconstitutional as impairing rights that are regulated and protected by Congress.

Fraud is not to be presumed against a patent right note, but must be proved.

The State can punish frauds committed upon its citizens by any manner of false pretenses, but cannot punish those done under color of rights held from the United States, on any different grounds from others.

Error to Genesee.     Submitted Oct. 2.     Decided Oct. 9.

ASSUMPSIT.     The facts are in the opinion.

*Henry C. Briggs* for plaintiff in error. A statute interdicting that which Congress in regulating commerce has permitted, cannot be sustained. *Brown v. Maryland*, 12 Wheat., 419; *State v. Robinson*, 49 Me., 285; *People v. Lawrence*, 54 Barb., 589; Cooley's Const. Lim., 581, 587. Statutes imposing conditions on the transfer of patent right notes are unconstitutional. *Gilman v. Philadelphia*, 3 Wall., 713; *Helm v. First Nat. Bank of Huntington*, 43 Ind., 167: 13 Amer. Rep., 395.

*T. G. Smith* for defendant in error. A patent right can be collaterally attacked in State courts for invalidity, fraud and want of value, as in an action on a bond or note given for it. *Page v. Dickerson*, 28 Wis., 694: 9 Amer. Rep., 532; *Rowe v. Blanchard*, 18 Wis., 441; *Head v. Stevens*, 19 Wend., 411; *Cross v. Huntly*, 13 Wend. 385; *Rich v. Hotchkiss*, 16 Conn., 409; *Middlebrook v. Broadbent*, 47 N. Y., 443.

CAMPBELL, J. Cranson, who was a *bona fide* holder of a promissory note given for the purchase of an interest in a patented invention, who had notice that such was the consideration, but who had no reason to believe there was any fraud in the transaction, brought suit on the note against the maker, and was defeated on the ground that the statute of this State, which requires such notes to show

upon their face the fact that they were given for patent rights, had not been complied with.

The court below refused to charge that this statute was invalid, and directed the jury to follow its provisions.

The statute, approved April 13, 1871, is entitled as follows: "An act to regulate the execution and transfer of notes or other obligations given for patent rights." It consists of two sections. The first section requires all notes and other negotiable or assignable instruments, the consideration of which, in whole or in part, consists of the right to make use of or vend any patent invention, to have prominently and legibly written or printed on its face the words "given for patent right." Such notes are made subject to the same defenses in the hands of every holder as exist against the original holder; and notes without this inscription are equally subject to such defenses when the holder knows they were given for such a consideration.

The second section makes it a misdemeanor to take, purchase, sell or transfer any such note not so inscribed, knowing it to have been given on such a consideration.

The general laws of Michigan concerning negotiable paper correspond with the law merchant, and protect all *bona fide* holders for value from defenses of which they have no knowledge.

The plain and avowed purpose of the statute of 1871 is to impose conditions on the transfer of patent rights, which do not apply to any other kinds of property, thereby interfering with the value and enjoyment of such rights, and treating them as a species of interests to be regarded with disfavor.

The subject of granting patents and regulating the rights of patentees has been placed by the constitution of the United States in the control of Congress. It is for that body alone to determine to whom and on what conditions they shall be granted and how the patented privileges are to be transferred or disposed of. Where any right or privilege is subject to the regulation of Congress it is not competent for State laws to impose conditions which shall interfere with the rights or diminish their value. In those cases where

the congressional power is lawfully exercised, it is supreme. In the absence of any policy to the contrary the transfer of such rights may follow, as it usually does, the State rules applicable to similar property, as to sales or inheritances. But any attempt to discriminate against it is a direct invasion of the authority of the United States, and is invalid.

· This doctrine is so elementary that reference to particular cases seems needless.        It has been applied to interference with exports and imports, to navigation laws and the instruments of commerce, to the taxation of government instrumentalities, to discriminating privileges against persons or interests protected by the constitution and to numerous unclassified cases involving conflicts of authority.        In many instances there may have been difficulties in determining whether any real conflict existed, but where it is recognized as existing there can be no doubt as to the immunity of the rights assured by the laws of the United States.

It is unfortunately true that many frauds are committed under color of patent rights, and that the patent laws are not so framed as to secure the public from being cheated by worthless inventions.        The State may punish frauds upon its citizens committed by any manner of false pretenses. But it cannot lawfully assume that the rights granted by the United States are presumably fraudulent, nor can it punish frauds committed by persons holding those privileges on any different grounds from others.        Such presumptions are in plain violation of every principle of justice and constitutional obligation.        *Miller v. Finley*, 26 Mich., 249.

While we cannot but recognize the magnitude of an evil which has brought patents into popular discredit, and has provoked legislation in several states similar to that of Michigan, we cannot on the other hand fail to see in these laws a plain and clear purpose to check the evil by hindering parties owning patents from dealing with them as they may deal with their other possessions.        The Constitution of the United States not only allows but favors the special protection of inventors.        The measure of that protection, and its conditions, cannot be fixed by any power but Congress, and the remedy for abuses or defects in the legislation of

that body must be found in its own revision of its own laws. It is not competent for state statutes to deal with them, or to revise the national policy.

We are compelled to hold the law of 1871 as a manifest violation of the Constitution of the United States, and as therefore void.

The court below erred in holding otherwise. The judgment must be reversed with costs and a new trial granted.

The other Justices concurred.