INHABITANTS OF THE COUNTY OF HAMPDEN *vs.* ROBERT O. MORRIS.

Hampden.     October 17, 1910.— January 2, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & RUGG, JJ.

*Constitutional Law.    Clerks of Courts.    Naturalization.    Statute,* Validity.

By art. 1, § 8, of the Constitution of the United States the making of laws relating to the naturalization of aliens is within the exclusive jurisdiction of Congress.

The amendment of R. L. c. 165, § 31, by St. 1908, c. 253, requiring the clerks of

the courts in the several counties to pay to the county treasurers the balances in their hands from the amounts received as fees in connection with the naturalization of aliens, after retaining the part of such money actually expended by them for clerical assistance, travel and other expenses while acting under the naturalization laws, is void, because it is in conflict with the law of the United States upon this subject contained in 34 U. S. Sts. at Large, c. 3592.

*It seems,* that, if the Legislature should provide that the salaries otherwise provided by statute for the clerks of courts should be diminished by the amounts received by them, for their own benefit, under the naturalization laws of the United States, the provision might be enforced.

CONTRACT by the inhabitants of the county of Hampden against the clerk of the Superior Court for that county to recover one half of the amount of the fees received by him in naturalization cases and retained by him under the provisions of the act of Congress of June 29, 1906, (34 U. S. Sts. at Large, c. 3592,) after deducting the amount of the expenses incurred by him in such proceedings in accordance with R. L. c. 165, § 31, as amended by St. 1908, c. 253.

In the Superior Court the case was submitted to *King*, J., without a jury, upon a statement of facts agreed to by the parties. The judge found the facts to be as stated in the statement of facts, and at the request of both parties reported all questions of law arising from the facts as found by him for determination by this court. If the plaintiff was entitled to recover, judgment was to be entered for the plaintiff in the sum of $969.08; otherwise, judgment was to be entered for the defendant.

The case was submitted on briefs at the sitting of the court in October, 1910, and afterwards was submitted on briefs to all the justices.

*S. S. Taft*, District Attorney, for the plaintiff.

*Asa P. French*, United States District Attorney, *W. H. Brooks & W. Hamilton*, for the defendant.

KNOWLTON, C. J. This is an action for money had and received. The defendant is the clerk of the courts for the county of Hampden, and he has in his hands certain fees received officially for services in connection with the naturalization of aliens. The question is whether he is bound to pay over to the county treasurer the balance in his hands, in accordance with the provisions of the R. L. c. 165, § 31, as amended by the St. 1908, c. 253 ; or whether his conduct is to be governed by the statute of the United States in regard to the naturalization of aliens.

The Constitution of the United States provides, art. 1, § 8, that " Congress shall have power . . . to establish an uniform rule of naturalization . . . throughout the United States " ; also " to make all laws which shall be necessary and proper for carrying into execution the foregoing powers," etc. It is entirely clear, under this provision, that the Congress has jurisdiction over the subject of the naturalization of aliens, and that this jurisdiction is exclusive. *Chirac* v. *Chirac*, 2 Wheat. 259. *Dred Scott* v. *Sanford*, 19 How. 393, 405. *United States* v. *Wong Kim Ark*, 169 U. S. 649, 700. *Gladhill, petitioner*, 8 Met. 168. *Stephens, petitioner*, 4 Gray, 559, 561.

The act of Congress of June 29, 1906, (34 U. S. Sts. at Large, c. 3592,) is " An Act to establish a bureau of immigration and naturalization, and to provide for a uniform rule for the naturalization of aliens throughout the United States." This contains very full and elaborate provisions covering the whole subject, and makes many new requirements to prevent fraud, and to insure results in the interest of good citizenship. It confers jurisdiction, for the purposes of the act, upon the United States Circuit and District Courts in every State, upon the District Courts for the Territories, upon the Supreme Court of the District of Columbia, and upon all courts of record in any State or Territory having a seal, a clerk, and jurisdiction in actions at law or in equity, or at law and in equity, in which the amount in controversy is unlimited.

If we assume that Congress could not compel the courts of a State to take jurisdiction of matters in regard to which the federal government has the exclusive right to legislate, (see *Kentucky* v. *Dennison*, 24 How. 66, 107; *Ex parte Virginia*, 100 U. S. 339, 348; *Stephens, petitioner*, 4 Gray, 559, 562,) there is no doubt that such courts, at least with the consent of the Legislature of the State, may exercise this jurisdiction if it is conferred upon them by a law of the United States. *Gladhill, petitioner*, 8 Met. 168. *Stephens, petitioner*, 4 Gray, 559, 561. *Levin* v. *United States*, 128 Fed. Rep. 826 ; *S. C.* 63 C. C. A. 476. *Robertson* v. *Baldwin*, 165 U. S. 275. *United States* v. *Nisbet*, 168 Fed. Rep. 1005. *State* v. *Libby*, 47 Wash. 481.

In this Commonwealth the Superior Court has been exercising jurisdiction of this kind since the passage of the act of Congress

of 1906, as well as before, and the St. 1908, c. 253, seems to give legislative consent to this action of the court.

It is plain, however, that the jurisdiction must be exercised under and in conformity with the federal statute. All the authority of the court is derived from that statute, and no proceedings can be taken by the State court or by any officer of it in a case of naturalization, that is at variance with the statute. As to all matters that enter directly into the subject of naturalization, this is too plain for argument. It is equally true of all matters of legislation by Congress that are fairly incidental to the exercise of the power given by the Constitution to deal with this subject.

The fees prescribed by the federal statute are not all the same as those prescribed by the law of Massachusetts under which naturalization was previously conducted. The disposition of the fees is not the same under the two statutes, and the methods of procedure are very different. As all authority for action is derived from the federal law, this authority permits only such action as that law prescribes. The fees must be regulated by that law, and unless the disposition of them is a matter not fairly belonging to the general subject referred to in the Constitution, the disposition of the fees must also be as therein provided. We are of opinion that the disposition of the fees, as well as the amount of them, may properly be regulated by congressional legislation, as incidental to the establishment of a system with a view to the accomplishment of good results. Under this federal statute the clerks of the courts are required to account to the Bureau of Immigration and Naturalization for one half of the fees collected by them, and to pay them over to the disbursing clerk of the Department of Commerce and Labor; and the other half the clerks may retain for themselves, first paying from these fees all additional clerical force that may be required in performing the duties imposed by the act. There are additional provisions for special conditions, such as the collection of fees in excess of $6,000 in one year, which we need not consider.

The law of Massachusetts (St. 1908, c. 253) requires that all fees received by the clerk in naturalization cases, except sums expended for additional clerical assistance, shall be paid over to the county treasurer. This statute is in conflict with the federal

law, and in our opinion must yield to it. This has been expressly decided by the Superior Court of Utah in a similar case. *Eldredge* v. *Salt Lake County*, 106 Pac. Rep. 939.

If the courts or Legislature elect to exercise the jurisdiction conferred by the federal statute, they must exercise it upon the terms and with the limitations stated in the statute. We assume that they may decline to exercise it at all; but, if they choose to exercise it, they cannot depart from the statute in any particular upon which it is within the constitutional power of Congress to legislate. The amount of the fees to be charged is a proper subject for congressional regulation. So too, in our opinion, is the disposition of the fees. Congress well might require a part of them to be paid into the treasury of the United States, where they would be available for the payment of a part of the expenses of maintaining the bureau. It cannot reasonably be contended that a State can take these fees away from the government of the United States. Congress well might think that the elaborate proceedings required by the statute impose such duties upon clerks of the courts that the interests of the public will be promoted by giving them special compensation to be taken from the fees. As this is the policy of the law under which the court is acting, the Legislature cannot nullify the statute by enacting that the clerk shall pay all the money to the county treasurer. *Farmers & Mechanics' National Bank* v. *Dearing*, 91 U. S. 29, 31. *Davis* v. *Elmira Savings Bank*, 161 U. S. 275. *Central National Bank* v. *Pratt*, 115 Mass. 539. *Griswold* v. *Pratt*, 9 Met. 16. *Parmenter Manuf. Co.* v. *Hamilton*, 172 Mass. 178.

The St. 1908, c. 253, relied on by the plaintiff, and other similar statutes, have for their object the limitation of the compensation of the clerks for all official services to the salaries prescribed by law. If the Legislature had seen fit, in reference to the fees for services in naturalization cases, to declare that the statutory salary elsewhere provided should be diminished by the amount received as fees in proceedings for naturalization, the provision might have been enforced. But the statute before us is not of this kind. It does not assume to change the salaries, but attempts to deal directly with the fees received under the law of the United States. In this respect it goes beyond the power of the Legislature.     *Judgment for the defendant.*