Argued December 18, 1912; decided January 7, rehearing denied
January 28, 1913.

### FIELDS v. MULTNOMAH COUNTY.*

(128 Pac. 1045.)

**Clerks of Courts—Fees—Naturalization Cases—Duty to Account
to County.**

Under Act Cong. June 29, 1906, c. 3592 (34 Stat. 596:
U. S. Comp. St. Supp. 1911, p. 124), authorizing State courts of
unlimited original jurisdiction in civil cases to naturalize aliens,
and providing for the collection of fees in naturalization cases
by the clerks of such courts, who are authorized to retain one-
half of the fees collected in any year up to $3,000, the balance
to be paid to the bureau of commerce and labor, the services
rendered by the clerk of a State court in naturalization cases
are not received in the performance of duties pertaining to his
office under the State laws; and hence the clerk is not required
to account for his fees earned in naturalization cases under
Sections 3116, 3122, L. O. L., providing for the payment of
salaries to county clerks, and requiring them to pay over all
fees collected to the county treasurer.

From Multnomah: WILLIAM N. GATENS, Judge.

Statement by MR. JUSTICE BEAN.

This is a mandamus proceeding by Frank S. Fields
against Multnomah County, Oregon, T. J. Cleeton, County
Judge, D. V. Hart and W. L. Lightner, County Commis-
sioners of Multnomah County, Oregon, John M. Lewis,
County Treasurer, and S. B. Martin, County Auditor,
to compel the defendants to audit and pay the salary
of plaintiff as county clerk of Multnomah County for
the months of July and August, 1911. The plaintiff in
his petition alleges, in substance, that he is the duly
elected, qualified, and acting county clerk of Multnomah
County; that his salary, as provided by law, is $3,000
per annum, payable in monthly payments of $250; that
the defendants have refused to audit or pay his salary

---

*As to the right of clerk on salary basis to retain fee for naturalization,
see note in 30 L. R. A. (N. S.) 810.        REPORTER.

for the above months, for the reason that he has collected certain fees under the federal naturalization law which he has appropriated to his own use, and refused to account to Multnomah County therefor. Plaintiff avers that he is entitled to all the fees collected by him in the administration of the naturalization statute, and that the county of Multnomah is not entitled to any part of such fees, and that he is not required by law to pay the same to such county.

A writ of mandamus was issued, to which the defendants filed a demurrer for the reason that the same did not state facts entitling the plaintiff to the relief sought. Upon a hearing, the court overruled the demurrer, and, the defendants refusing to further plead, it was ordered that a peremptory writ should issue. From that judgment the defendants have appealed.          AFFIRMED.

For appellants there was a brief over the names of *Mr. George J. Cameron,* District Attorney, *Mr. Frank T. Collier,* Deputy District Attorney, and *Mr. Charles W. Fulton,* with an oral argument by *Mr. Fulton.*

For respondent there was a brief over the names of *Mr. John F. Logan* and *Mr. Isham N. Smith,* with an oral argument by *Mr. Smith.*

MR. JUSTICE BEAN delivered the opinion of the court.

It is the contention of defendants that, under the provisions of Sections 3107, 3116, 3122, 3154, and 3155, L. O. L., the salary fixed by law for the county clerk is in full compensation for his services, and he is required to pay all fees, percentages, commissions, and charges to the county treasurer; that the act of Congress of June 29, 1906, authorizing the clerk of a State court to collect the fees therein provided, and to retain one-half of the fees collected by him in such naturalization proceeding, does not authorize him to appropriate the same to his own use; and that the statute of this State requires

him to pay all fees over to the county treasurer. Section 3116, L. O. L., reads as follows:

"The fees, percentages, commissions, and charges now established by law, or in any manner allowed, for the performance of any act or duty by or required of the * * clerk of the circuit court * * shall continue and remain the established fees, percentages, commissions, and charges for such act or duty; and the respective officers herein named are hereby required to collect * * said fees, percentages, commissions, and charges, * * and said officers shall pay over the same to the county treasurer of Multnomah County. * * "

Section 3122, L. O. L., requires the following:

"No fees, percentages, commissions, or compensations shall be allowed or. paid * * any officer named in this act, to be retained by him, other than the salary fixed by law for such officers."

The act of Congress approved June 29, 1906 (Act June 29, 1906, c. 3592: 34 Stat. 596: U. S. Comp. St. Supp. 1911, p. 124), entitled, "An act to establish a bureau of immigration and naturalization, and to provide for a uniform rule for the naturalization of aliens throughout the United States," insofar as deemed material in this case, provides as follows: Exclusive jurisdiction to naturalize aliens is conferred upon the United States courts, and all courts of record in any State, having a seal, a clerk, and unlimited jurisdiction in civil cases. The courts shall be furnished with blank forms as may be required. Section 13 of the act, concerning fees, provides:

"That the clerk of each and every court exercising jurisdiction in naturalization cases shall charge, collect, and account for the following fees in each proceeding: For receiving and filing a declaration of intention and issuing a duplicate thereof, one dollar. For making, filing, and docketing the petition of an alien for admission as a citizen of the United States and for the final hearing thereon, two. dollars; and for entering the final order and the issuance of the certificate of citizenship thereunder, if granted, two dollars."

And the act also states, in effect, that the clerk shall be permitted to retain one-half of the fees in any fiscal year up to the sum of $3,000, and all fees in excess of such amount shall be accounted for and paid over to said bureau. It is further enacted by the same section that "the clerks of the various courts exercising jurisdiction in naturalization proceedings shall pay all additional clerical force that may be required in performing the duties imposed by this act upon the clerks of courts from fees received by such clerks in naturalization proceedings." Respecting deputies, and to provide for a large amount of business, if transacted in any court, we find the following provision in Section 13:

"And in case the clerk of any court exercising naturalization jurisdiction collects fees in excess of the sum of six thousand dollars in any fiscal year the secretary of commerce and labor may allow salaries, for naturalization purposes only, to pay for clerical assistance, to be selected and employed by that clerk, additional to the clerical force, for which clerks of courts are required by this section to pay from fees received by such clerks in naturalization proceedings, if in the opinion of said secretary the naturalization business of such clerk warrants further additional assistance; *provided,* that in no event shall the whole amount allowed the clerk of a court and his assistants exceed the one-half of the gross receipts of the office of said clerk from naturalization fees during such fiscal year."

The act further ordains in Section 21 that it shall be unlawful for any clerk of any court exercising jurisdiction in naturalization proceedings to demand or receive any other or additional fees in naturalization proceedings over the fees and moneys herein specified; and provides a punishment for any infraction of the rule. Section 8, Article I, of the Federal Constitution, directs that "the Congress shall have power * * to establish a uniform rule of naturalization * * throughout the United States; * * to make all laws which shall be necessary and proper

for carrying into execution the foregoing powers," etc. Under this provision, unquestionably the Congress has jurisdiction over the subject of naturalization of aliens, and this jurisdiction is exclusive. *Inhabitants of Hampden County* v. *Morris,* 207 Mass. 167 (93 N. E. 579: Ann. Cas. 1912A, 815) ; *Chirac* v. *Chirac,* 2 Wheat. 259 (4 L. Ed. 234) ; *Dred Scott* v. *Sandford,* 19 How. 393, 405 (15 L. Ed. 691). Apparently, in order that there might be no doubt as to the exclusive power of Congress over the subjects referred to, we find in Article VI of the Federal Constitution, this language:

"This Constitution, and the laws of the United States which shall be made in pursuance thereof, and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every State shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."

The Congress of the United States having exercised the supervisory power over the subject of naturalization of aliens thus conferred, its legislative act is paramount and exclusive, and must be taken as a guide in the administration of the naturalization laws by the State courts. For the purpose of the administration of the naturalization acts, all courts having jurisdiction under the acts are Federal courts. *United States* v. *Aakervik* (D. C.), 180 Fed. 137. The act of 1906 makes new regulations in regard to the fees of the clerks in naturalization cases, and any rule governing the matter theretofore existing is abrogated.

In *Eldredge* v. *Salt Lake County,* 37 Utah, 188, 193 (106 Pac. 939, 941), speaking of the duties of the clerk, the court says: "The State within its sphere of sovereign power may thus impose any duties it sees fit upon the office it has the power to create so long as the duties it imposes come within its sovereign power. The State, however, cannot, without the consent of the National Gov-

ernment, empower any State officer to discharge functions belonging exclusively to the National Government. If this be so, then it follows that in creating the office of which appellant is the incumbent the State, without the consent of Congress, could not confer upon him the authority to discharge any of the duties which are required of him by the Act of Congress of June 29, 1906, and in which the fees in question were obtained by him." Where any right or privilege is subject to the regulations of Congress, it is not competent for State laws to impose conditions which shall interfere with the rights or diminish their value. *Cranson* v. *Smith,* 37 Mich. 309 (26 Am. Rep. 514). In *Hampden County* v. *Morris,* 207 Mass. 167 (73 N. E. 579: Ann. Cas. 1912A, 815), the Massachusetts court considered the validity of a State statute of 1908, requiring clerks to pay fees in naturalization matters to the county treasurer. It was held that the statute was in conflict with the Federal law, and that the amount and disposition of such fees are proper subjects for congressional regulation.

The office of the county clerk and *ex officio* clerk of the circuit court is created by the laws of the State of Oregon. The various duties pertaining to that office, strictly speaking, are defined by those laws. These are the duties assumed by the person filling the office, and are taken as a standard in the measurement of the compensation fixed by statute. In the event that the State courts exercise the jurisdiction conferred by the Federal statute, the duties of the clerk pertaining to naturalization matters are in addition to those imposed by the State, for which the salary is provided. In naturalization proceedings the clerk acts as the agent of the United States. The act of 1896 makes full provisions both in general and in detail for the administration of the law. It prescribes the duties of the clerk, and fixes his compensation. For the State to direct what the reward of an agent of the

general Government shall be when the same is regulated by an act of Congress would tend to disarrange the scheme or policy contemplated, and to conflict therewith, to the detriment of the public service. The State cannot, without authority from the United States Government, empower a State officer to exercise the functions conferred by this Federal law, and should not directly or indirectly regulate the fees for such duties. In case a large amount of business is transacted in any court in the exercise of naturalization jurisdiction, the act authorizes the payment for clerical assistance employed by the clerk. The reasons for conferring jurisdiction in these matters upon State courts was apparently in order to suit the convenience of petitioners for naturalization and their witnesses, especially in counties remote from the places where the Federal courts are held. It is not attempted to compel the State courts to exercise the power given. The circuit courts of this State have been exercising jurisdiction in such matters both before and since the enactment of this law. No excessive burden upon any county of the State should be anticipated.

Under the provision of the act of Congress, the plaintiff is entitled to receive and retain the clerk's fees in naturalization matters, and he is not required to pay the same to Multnomah County. The judgment of the lower court is therefore affirmed.                    AFFIRMED.

---

On Motion to Dismiss, decided March 12, 1912; On the Merits, argued January 21, decided January 28, 1913.