## STATE OF INDIANA, EX REL. BOARD OF COMMISSIONERS OF THE COUNTY OF MARION, *v.* QUILL ET AL.

[No. 8,601. Filed June 3, 1913.]

1. CONSTITUTIONAL LAW.—*Naturalization of Aliens.—Power of Congress.*—Under §8, Art. 1 of the Federal Constitution, the Congress has exclusive jurisdiction over the subject of the naturalizations of aliens. p. 497.

2. ALIENS.— *Naturalization.— Statutes.—* "*Fees.*"—The amount of money retained by the clerk of the circuit court under the provisions of the federal naturalization statute (Act of Congress of June 29, 1906, 34 U. S. Stat. at Large C. 3592), is within the meaning of the term "fee", since the charge for services required of the clerk by said act implies a fee and is specifically designated therein as a fee. p. 498.

3. STATUTES.—*Conflict With Act of Congress.—Validity.*—A state law which is in conflict with an act of Congress is invalid. p. 498.

4. ALIENS.—*Naturalization.—Fees.—Statutes.—Repeal.*—That part of the fee and salary law of Indiana relating to the fees of clerks in naturalization cases (§7324 Burns 1908, Acts 1895 p. 319, §114) is in effect repealed by the Act of Congress of June 29, 1906, 34 U. S. Stat. at Large C. 3592. p. 498.

5. CLERKS OF COURTS.—*Compensation and Fees.—Statutes.*—Under §7324 Burns 1908, Acts 1895 p. 319, §114, the clerk of the circuit court is not required to account to the county for all the emoluments of his office, but only for such fees as are provided for in the statutory fee bills. p. 499.

6. ALIENS.—*Naturalization.—Ownership of Fees.*—In the naturalization of aliens under the Act of Congress of June 29, 1906, 34 U. S. Stat. at Large C. 3592, the circuit courts of the State act as agencies of the Federal Government, and the officers of such courts are federal officers in that behalf, so that the fees which the clerk of the circuit court is authorized to retain out of the charges provided for services performed under that act belong to him personally and are not controlled by the provisions of the State fee and salary law. p. 500.

From Marion Circuit Court (21,746); *Charles Remster,* Judge.

Action by the State of Indiana, on the relation of the Board of Commissioners of the County of Marion, against

Leonard M. Quill and others. From a judgment for defendants, the relator appeals. *Affirmed.*

*Thomas M. Honan,* Attorney-General, *Edwin Corr, Thomas H. Branaman* and *James E. McCullough,* for appellant.

*Martin M. Hugg,* for appellees.

ADAMS, C. J.—The error assigned in this appeal is predicated on the sustaining of appellee's demurrer to appellant's complaint. The action was brought against appellee Quill, as clerk of the Marion Circuit Court, and his bondsmen, to recover $1289.50, being one-half of fees collected by him in proceedings for the naturalization of aliens, and not turned over to the county of Marion.

The single question presented by the record and briefs is: Do the fees so collected and retained by the clerk belong to him, or do such fees belong to the county of Marion? The question is one of first impression in this State, and is not free from doubt. We believe, however, that the better reason, as well as the weight of authority is with the appellee. By §7226 Burns 1908, Acts 1895 p. 319, §21, it is provided that the county officers named in the fee and salary act, shall be entitled to receive for their services the compensation specified in the act, and shall receive no other compensation whatever. By §7353 Burns 1908, Acts 1895 p. 319, §136, it is provided that nothing herein shall be construed as to allow any of the officers named the salary provided and also the fees required to be taxed, except as otherwise specified. Section 7324 Burns 1908, Acts 1895 p. 319, being §114 of the fee and salary act, in force June 28, 1895, is in part as follows: "The clerks of the circuit, criminal and superior courts of this state on behalf of the county in which said courts are held, shall tax and charge upon proper books, to be kept in their offices for that purpose, the fees and amounts provided by law, which amounts so taxed shall be designated as 'clerk's costs,' but they shall

in no sense belong to and be the property of the clerk, but shall belong to and be the property of the county.  *   *   * For recording and indexing each declaration of intention of any person desiring naturalization, administering the oath of abjuration and issuing certified copy thereof under official seal to applicant, one dollar.  For making and indexing record of the naturalization of any person, administering oath of abjuration and issuing certificate of naturalization with official attestation and seal attached one dollar. *   *   * ''  By §236 Burns 1908, §236 R. S. 1881, all statutes of the United States in force and relating to the subjects over which Congress has the power to legislate for the states, and not inconsistent with the Constitution of the United States, are declared to be a part of the laws governing this State.   Under §8, Art. 1 of the Federal Constitution, it is provided that Congress shall have power to establish uniform rules of naturalization throughout the United States, and to make all laws which shall be necessary and proper for carrying into execution such powers. It must follow that in the exercise of the power thus conferred, the Congress has exclusive jurisdiction over the subject of the naturalization of aliens.   By the Act of Congress of June 29, 1906, 34 U. S. Stat. at Large C. 3592, jurisdiction in the naturalization of aliens was conferred on state courts of record.   It is provided by said act (§9055k Burns 1908, Acts of Congress of June 29, 1906), that ''The clerk of every court exercising jurisdiction in naturalization cases shall charge, collect, and account for the following fees in each proceeding: For receiving and filing a declaration of the intention and issuing a duplicate thereof, one dollar.   For making, filing, and docketing the petition of an alien for admission as a citizen of the United States, and for the final hearing thereon, two dollars; for entering the final order and issuance of the certificate of citizenship thereunder, if granted, two dollars.   The clerk of any court

collecting such fees is authorized to retain one-half of the fees collected by him in such naturalization proceeding; the remaining one-half of the naturalization fees in ·each case collected by such clerks, respectively, shall be accounted for in their quarterly accounts, which they shall render the Bureau of Immigration and Naturalization, and pay over to such Bureau within thirty days from the close of each quarter of each fiscal year.   *   *   *   '' It is also provided that clerks shall be permitted to retain one-half of the fees in any fiscal year up to the sum of $3,000; that all such fees received by clerks in 'excess shall be accounted for and paid over to said Bureau.   It is further provided that clerks shall pay all additional clerical force required in performing the duties imposed, from fees received in naturalization proceedings.   The forms used in naturalization cases are set out in the act, all blanks are furnished by the Federal Bureau of Immigration and Naturalization, and clerks are required to account to said bureau for such blanks.

2. It is not seriously contended by appellee that the amount retained by the clerk and sued for in this action does not fall within the meaning of the term "fees."   The charge for services required by the federal act to be performed by clerks of state courts implies a fee, and is specifically designated in the act as a fee.   But it is contended by appellee, that, the fees in naturalization cases being authorized by the federal statute, the clerk becomes the agent of the United States in rendering such services, and is not bound by a state law in regard to the disposition of such fees.

3. It is well settled that a state law which is in conflict with an act of Congress is invalid.   It follows, therefore, that the fee and salary law of Indiana,
4. as to clerk's fees in naturalization cases, enacted in 1895, has been repealed by the federal act of 1906. It must also follow that since its enactment, the latter act constitutes the only law in this State on the subject of fees

in such cases. *County of Hampden* v. *Morris* (1911), 207 Mass. 167, 93 N. E. 579, Ann. Cas. 1912 A 815; *Eldredge* v. *Salt Lake County* (1910), 37 Utah 188, 106 Pac. 939; *Fields* v. *Multnomah County* (1913), 64 Or. 117, 128 Pac. 1045. While the language employed in the Indiana act, §7324, *supra,* is broad and comprehensive, yet our Supreme Court has held that a county officer is not required to account to the county for all compensation received by him by virtue of his office; that the act of 1895 does not require a county auditor to charge the amount allowed by a former statute for his services as a member of the board of review, as a fee in favor of the county. *Seiler* v. *State, ex rel.* (1903), 160 Ind. 605, 615, 65 N. E. 922, 66 N. E. 946, 67 N. E. 448. Again, in *State, ex rel.* v. *Flynn* (1903), 161 Ind. 554, 69 N. E. 159, it was held that the services of the clerk of the circuit court, in preparing bar dockets and his per diem allowance for attending court are not fees within the meaning of the act of 1895, but may be retained by the clerk as his own. The court, at page 577, said: "It is only the amount of fees which the clerk is to tax and charge as 'clerk's costs' upon proper books as the property of the county, and not all allowances from whatever source derived." From the rule announced in the foregoing cases, it would seem to be the settled law of this State that a public officer, whose compensation is fixed by the fee and salary law, is not required to account to the county for all the emoluments of his office, but only for such fees as are provided for in the statutory fee bills. We think, however, the averments of the complaint in the case at bar disclose a state of facts presenting a question the determination of which must be conclusive of this appeal. That question pertains to the legal status of appellee Quill in the performance of the service required of him in naturalization cases by the federal statute.

As we have seen, the power to establish uniform rules of naturalization throughout the United States is lodged exclu-

sively in the Congress.    In the exercise of that power,
6.    laws have been enacted covering in great detail every
    phase of the subject, and the administration of
such laws has been committed not only to the federal courts
but to the state courts as well.    It is obvious that when a
state court assumes jurisdiction conferred by a federal stat-
ute, such jurisdiction must be exercised in conformity with
the statute conferring the same.    The court derives no au-
thority from any other source.    It becomes a federal court
for the purpose of naturalizing aliens, or at least an agency
of the Federal Government, and the officers of the court are
necessarily the officers of the Federal Government in that
behalf.    To this date, five cases have been reported involving
facts identical with the facts in the case at bar.    These cases
are *Eldredge* v. *Salt Lake County, supra; County of Hamp-*
*den* v. *Morris, supra; Fields* v. *Multnomah County, supra;*
*San Francisco* v. *Mulcrevy* (1910), 15 Cal. App. 11, 113
Pac. 339; and *Barron County* v. *Beckwith* (1910), 142 Wis.
519, 124 N. W. 1030, 30 L. R. A. (N. S.) 810, 135 Am. St.
1079.    In *County of Hampden* v. *Morris, supra,* the court
said:    "The fees prescribed by the federal statute are not
all the same as those prescribed by the law of Massachusetts
under which naturalization was previously conducted.    The
disposition of the fees is not the same under the two stat-
utes, and the methods of procedure are very different.    As
all authority for action is derived from the federal law, this
authority permits only such action as that law prescribes.
The fees must be regulated by that law, and unless the dis-
position of them is a matter not fairly belonging to the gen-
eral subject referred to in the Constitution, the disposition
of the fees must also be as therein provided.    We are of
the opinion that the disposition of the fees, as well as the
amount of them, may properly be regulated by congressional
legislation, as incidental to the establishment of a system
with a view to the accomplishment of good results."    The
Utah and Oregon cases are to the same general effect.    The

California case seems to turn on a provision of the charter of the city and county of San Francisco, which required that the county clerk "shall pay all money coming into his hands as such officer, no matter from what source derived or received, into the treasury of the city and county of San Francisco within twenty-four hours after receipt of the same." In the opinion the Utah case was distinguished, the court saying: "It does not appear from the opinion to have been a condition of the bond, or the duty of the clerk, to perform all official duties that may have been imposed upon him by law, nor did the statute require the clerk to pay all moneys, 'no matter from what source derived,' into the treasury of the county." In the Wisconsin case, it is stated that the county board by resolution "provided that all such fees, *per diem* and compensation for services rendered, should be turned over to the county treasurer, according to law." The court, however, took a broad view of the case, and in the discussion fairly sustained the position of appellant in this case, although admitting that the question presented was one not easy of solution. Upon the clear weight of authority, we think the complaint before us does not state a cause of action, and that the trial court did not err in sustaining the demurrer thereto.

The judgment is affirmed.

Note.—Reported in 102 N. E. 106. See, also, under (*) 2 Cyc. 111; (3) 8 Cyc. 773; 36 Cyc. 944; (5) 7 Cyc. 235.