# The People of the State of Illinois for use of County of La Salle, Appellant, v. John L. Witzeman et al., Appellees.

## Gen. Nos. 5,924, 5,925.

1. COURTS, § 141*—*when statutes and decisions not binding on.* Constitutional and statutory provisions regulating the salaries of clerks of courts of record for the performance of duties imposed upon them by the laws of the State and the construction placed by the courts upon such provisions are not necessarily decisive of the rights of such clerks to fees for performance of duties imposed upon them by the Federal Naturalization Act.

2. ALIENS, § 13*—*when Federal regulation of naturalization exclusive.* U. S. Const. art. I, § 8, clause 4, gives Congress the power to establish uniform rules of naturalization, and this jurisdiction, when exercised, is exclusive and repeals former laws by which the states naturalized citizens and fixed the fees and their application.

3. UNITED STATES, § 1*—*when enforcement of Federal act not obligatory upon State court.* Congress possesses no power to compel a State court to enforce the Federal Naturalization Act.

4. UNITED STATES, § 1*—*when naturalization expenses not obligatory upon State or county.* The State is not bound to pay for the clerical services required in the naturalization of aliens in State courts under the Federal Naturalization Act, nor is the county board bound to make the clerk any allowance for a clerical force or other expenses incidental to such proceedings.

5. ALIENS, § 13*—*how expenses to be met.* It is the purpose of the Federal Naturalization Act that the expenses of clerical assistance necessary to carry out the requirements of the act sl.ould, in the State courts, be met by the fees fixed by the act and not borne by the State.

6. CLERKS OF COURT, § 14*—*when entitled to fees fixed by Federal act for naturalization services.* The county has no claim to fees collected by its Circuit Court clerk for performing services and fixed in accordance with the Federal Naturalization Act, especially where the county has not provided or paid for any clerical assistance.

Appeal from the Circuit Court of La Salle county; the Hon. S. C. STOUGH, Judge, presiding. Heard in this court at the October term, 1914. Affirmed. Opinion filed January 6, 1915.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

W. E. Redmon and W. I. Hibbs, for appellant.

Duncan & O'Conor, for appellees.

Mr. Justice Dibell delivered the opinion of the court.

The county of LaSalle brought two actions of debt upon the official bonds of John L. Witzeman, its circuit clerk, ·one upon the bond given for the official term beginning on the first Monday of December, A. D. 1904, and the other upon the official bond given for the term beginning the first Monday of December, A. D. 1908. The sureties on each bond were the same, so that all the parties to each case were the same. In each case a proper declaration was filed, alleging three breaches of the bond. The first and third breaches assigned bore no relation to the subject-matter of this opinion. They were afterwards dismissed. The second breach ·in each declaration charged that said circuit clerk had received, during the term of office covered by that bond, ·fees for the naturalization of aliens, and had not reported the receipt of said fees to the chairman of the · county board, and had not paid said fees to the county treasurer, but had converted said moneys to his own· use. Demurrers were filed and sustained to each of said second breaches. As the first bond took effect as of the first Monday of December, 1904, and the present Naturalization Act was not approved until June 29, 1906, and did not go into force until ninety days from ·its passage, there might have been naturalization fees received by this clerk under former and very different naturalization laws, under which the State fixed and controlled the fees for naturalization, and if such fees had not been duly accounted for, there might be a liability under this bond therefor; but counsel for both parties, in argument, have assumed that the only matter here litigated is the naturalization fees received by ·the clerk under said Federal Statute of 1906, and

therefore we will confine our discussion to the meaning and effect of that act. After said demurrers were sustained there was a judgment for costs in each case, and an appeal therefrom to this court. We dismissed those appeals in *People v. Witzman*, 186 Ill. App. 216, because there were no final judgments in the record. Thereafter, final judgments were entered in the court below, and these appeals are prosecuted to this court. As the cases are the same except as to the period covered by the bond sued on, one opinion will dispose of both cases.

The Federal Act of June 29, 1906, establishes a complete code for the naturalization of aliens, and practically annuls substantially all previous statutes upon that subject. It confers exclusive jurisdiction to naturalize aliens as citizens of the United States upon certain Federal courts, and upon all courts of record in any State or territory having a seal, a clerk and jurisdiction at law or equity in which the amount in controversy is unlimited, which in this State includes the Circuit Courts. Section 13 of said Act requires the clerk of each court exercising jurisdiction in naturalization cases to charge, collect and account for the fees therein specified. The fee for receiving and filing a declaration of intention to become a citizen, and issuing a duplicate thereof, is fixed at $1. The fee for making and filing and docketing the petition of an alien for admission as a citizen of the United States and for the final hearing thereon is fixed at $2, and the fee for entering the final order and the issuance of a certificate of citizenship thereunder is fixed at $2. The clerk is therein authorized to retain one-half of the fees collected by him in such naturalization proceedings, and to account for the remaining one-half in his quarterly accounts required to be rendered to a certain department of the Federal government, and he is required to pay over to that department, within thirty days after the close of each quarter of each year, the one-half of

the fees so received, and that sum is required to be deposited in the treasury of the United States.    The petitioner for naturalization is also required to pay to the clerk a sum sufficient to cover the expenses of subpœnaing and paying the legal fees of any witnesses for whom the petitioner may request a supœna, and when the proceeding for naturalization is ended the clerk is required to pay the witness' fees from such sum, and return the residue, if any, to the petitioner. It is also provided that when the one-half which the clerk is permitted to retain shall reach the sum of $3,000 in any one fiscal year, all fees received by such clerk in naturalization proceedings in excess of such amount in said year shall be paid over to a department of the Federal government.    That section also provides that the clerk of a court exercising jurisdiction in naturalization proceedings shall pay all additional clerical force that may be required in performing the duties imposed by that act upon such clerk from fees received by him in naturalization proceedings, and that if such clerk in any one year collects fees in excess of $6,000,—that is, if the one-half retained by the clerk exceeds $3,000,—then the secretary of Commerce and Labor may allow such clerk, from the money which the United States shall receive, additional compensation for the employment of additional clerical assistance, if, in the opinion of such secretary, the business of said clerk warrants such allowance.

Section 9 of article X of the Constitution of 1870 of the State of Illinois provides that the clerks of all courts of record shall receive, as their only compensation for their services, salaries, to be fixed by law, and paid only out of the fees of the office actually collected, and that all fees, perquisites and emoluments above the amount of said salaries shall be paid into the county treasury, and that the number of the deputies and assistants of such officers shall be determined by rule of the Circuit Court, to be entered of record, and

their compensation shall be determined by the county board.  Section 10 of said article requires the county board to fix the compensation of all county officers, and the amount of their necessary clerk hire, and their expenses, and where fees are provided for said compensation shall be paid only out of them, and shall in no instance exceed the fees actually collected, and that all fees or allowances by said clerks received in excess of their said compensation shall be paid into the county treasury.  Section 51 of chapter 53 of the Revised Statutes is intended to carry into effect these constitutional provisions and requires each county officer to keep an account of all his fees and emoluments earned, and all payments received, and to account therefor, and to report the same twice each year to the chairman of the county board, and to pay over to the county treasurer the balance in his hands after deducting his salary and such expenses as the county board may allow.  There are numerous cases in this State strictly enforcing the foregoing constitutional and statutory provisions, and holding that even the imposing of new duties upon such an officer after he has entered upon his office will not permit him to receive, or the Legislature to confer upon him, any additional compensation therefor.  These provisions and decisions, however, were enacted and announced with reference to duties imposed upon him by the laws of the State, and we do not consider them as necessarily decisive of the question here involved.

The fourth clause of section 8 of article I of the Constitution of the United States gave to Congress the power to establish uniform rules of naturalization. Undoubtedly that jurisdiction, when exercised, is exclusive, and operates to repeal former laws by which the States naturalized citizens of the United States, and fixed the fees therefor, and controlled the application of said fees; and numerous decisions which were made under those former laws are no longer authority.

When Congress confers jurisdiction upon a Federal court, such act binds the Federal court, and it is compelled to perform the duty so imposed upon it. Congress possesses no power to compel a State court to entertain proceedings for the enforcement of Federal statutes such as this. It has been said that such an act as this confers upon the State court permissive jurisdiction; that is, the State court is permitted to act, but cannot be coerced into doing so. *Robertson v. Baldwin,* 165 U. S. 275; *State v. Judges of Common Pleas Hudson Co.* (N. J.) 30 L. R. A. 761 and notes. It was said in *Commonwealth of Kentucky v. Dennison,* 24 How. (U. S.) 66, page 108, that Congress may authorize a particular State officer to perform a particular duty, but if he declines to do so it does not follow that he may be coerced. The court there referred to laws which have been passed authorizing State courts to entertain jurisdiction in certain proceedings by the United States, and said that these powers were for some years exercised by State tribunals readily, and without objection, until, in some States, it was declined because it interfered with and retarded the performance of duties which properly belonged to them as State courts. The Court there said that in these cases the co-operation of the States was a matter of comity, which the several sovereignties extended to one another for their mutual benefit, but was not regarded as an obligation imposed by the Constitution, and that the Acts of Congress conferring jurisdiction merely gave the power to the State tribunals and left it to the States to exercise such power or not, as might best comport with their own sense of justice and their own interest and convenience. In the matter of admitting aliens to become citizens of the United States, there are Federal courts in each State entirely competent to do all of that work, but there are only a few such courts in each State, and many aliens are located far distant from the place where such courts are held, and it would

be a great burden to compel them to attend with their witnesses at the place where such courts are held, and it is therefore a matter of great convenience to them to have this jurisdiction conferred upon the State courts. The jurisdiction so conferred upon State courts, however, is not compulsory. No doubt the Legislature of any State might forbid its courts to devote any time to this work. Probably any particular court of the State might lawfully refuse to turn aside from its other business to naturalize aliens. Indeed we are advised that certain courts in this State refuse to take jurisdiction in naturalization proceedings under the Federal statute. Undoubtedly the clerk of the court would not be permitted to decline to perform this work so long as he is not forbidden by the Legislature or by the court of which he is the clerk. We regard it as entirely clear that the State is not bound to pay for the clerical services required in the naturalization of aliens in the State courts, nor is the county board bound to make the clerk any allowance for a clerical force or other expenses for such service.

It may be instructive to ascertain from said Naturalization Act what duties are required of the clerk of the court in naturalization proceedings. The government of the United States furnishes to each such clerk blank forms and all records and documents required in the naturalization of aliens. The alien must file, at least two years prior to his application for admission, a declaration of his intention to become a citizen. The law does not say that the clerk shall do the clerical work of filling up the blank form of such declaration, which has been furnished him by the United States, but it is a matter of common knowledge that he must do so in substantially all cases, because the alien seldom has the ability to fill up such a declaration correctly and completely, and the construction put upon the language of such a declaration by the officers controlling the naturalization department of the government is such that

extreme care and accuracy is required, or the applicant
to be naturalized must finally fail.   The clerk who fills
up this form must ascertain and set forth the name
and age and occupation of the applicant, and must
insert in such declaration his personal description.
Each of the forms prepared and furnished by the de-
partment for use  in naturalization  proceedings re-
quires the insertion of the color, complexion, height in
feet and inches, weight, color of the hair, color of the
eyes, and other visible distinctive marks of the appli-
cant.   There must also be inserted in said petition the
place of birth of the applicant, and the form prescribed
requires the date of his birth.   There must also be in-
serted in said petition the date of the arrival of the
applicant in the United States, the name of the vessel
in which he came, and the forms prescribed require the
clerk to ascertain and insert the character of the con-
veyance or the name of the transportation company by
which the applicant arrived, if he did not come upon
a vessel; and it must state also his last foreign resi-
dence and his present place of residence in the United
States.   There must be prepared a duplicate of said
declaration of intention.   When the time has arrived
at which the applicant can apply to become a citizen a
petition therefor must be filed.   This the clerk, from
the necessities of the case, must prepare, upon the
forms furnished him, and must ascertain from the ap-
plicant his full name, his place of residence, with street
and number, his occupation, the date and place of his
birth, the place from which he emigrated, the place of
his arrival in the United States, the name of the vessel
on which he arrived; and the forms furnished require
that, if he did not arrive by vessel, then the character
of the conveyance by which he arrived or the name of
the transportation company shall be given, and also the
time when and place where and the name of the court
where he declared his intention to become a citizen.
The clerk must ascertain if the applicant is married,

and if so, must insert his wife's name, and where she was born. There must be inserted the number of his children, and the name of each child, and the date and place of its birth, and the place of residence of each. The petition must be made to state the time when he arrived in the State where the application is heard, and where he resided prior to that time, if in the United States, and if he has previously petitioned for citizenship which has been denied, the petition must state the name of the court in which said application was made, and the date when and the reason why the same was denied. To this petition must be annexed an affidavit of the petitioner and of two witnesses; and the name and occupation and place of residence of each witness must be given, and the length of time which each witness has known the petitioner, and other details. Certain particular days of the court must be set aside by order of court as naturalization days, and the petition must be set down for hearing by the clerk for a particular naturalization day, and upon the filing of the petition the clerk must post in a public and conspicuous place in his office, or in that building, a notice giving the name, nativity and residence of the alien, the date and place of his arrival in the United States, the date fixed for the final hearing of his petition and the names of the witnesses, and if requested, the clerk must issue a subpoena for said witnesses. He must attend the hearing on naturalization day, and swear the witnesses, and administer the oath of allegiance to the petitioner who is admitted, and must then issue to him a certificate of naturalization, in which the clerk must give the new citizen's age, his height in feet and inches, his color, his complexion, the color of his eyes, the color of his hair, and his visible distinguishing marks, the name, age and place of residence of his wife and of each of his minor children, and must fill in the name of the citizen and his residence, and the term of the court and the day of the term at which he was admitted, and

a copy of the order admitting him. The clerk must also fill out a stub of said certificate, containing these details, and the number of the certificate and the number of the stub must correspond. On the first working day of each month the clerk must send to the department at Washington duplicates of all declarations of intention, petitions for naturalization and certificates of naturalization filed or issued during the preceding month, and must send therewith a report showing the number of such papers filed or issued during the preceding month, and in the case of petitions for naturalization he must report to the department the approximate days of the final hearings. He also is required, within thirty days after each final hearing, to report to the department the name of each alien who is denied naturalization. He is also subject to the direction of said department, and must send to the department certified copies of such other proceedings and hearings instituted in or issued out of his said court as affect or relate to the naturalization of aliens, and as may be required from time to time by the department. Numerous rules and regulations are adopted by the department controlling the naturalization of aliens, and these are changed from time to time, and they must be studied and obeyed by the clerk. The government not only requires great particularity in the declaration of intention, but also in the petition for naturalization, and these details must be carefully ascertained and correctly inscribed in the petition, or great danger arises that the application may be denied because of the incorrectness or incompleteness of the statements therein made. In counties composed of rural communities, where residences are rarely changed and immigrants seldom locate, the work imposed upon the clerk of such court by naturalization proceedings during any one year will be slight. Where there is a large foreign population and many manufactories and industrial works inviting foreign

labor, the duties of such a clerk in naturalization proceedings may be very great.

It is obvious that Congress had no power to impose the burden of this clerical work upon the State, nor upon the county where the naturalization is had. It seems to us equally clear that Congress had no such intention. This seems plain from the general scope and structure of the Naturalization Act; and also from the following language in section 13 thereof: "The clerks of the various courts exercising jurisdiction in naturalization proceedings shall pay all additional clerical force that may be required in performing the duties imposed by this act upon the clerks of courts, from fees received by such clerk in naturalization proceedings." These are specific directions by Congress to the clerks to expend these fees in paying all additional clerical force required to perform the duties imposed upon the clerk by this Naturalization Act. How can the State or the county be heard to require the clerk to disobey these directions by Congress in a matter over which Congress has exclusive control, and instead to pay the fees to the county, and to accept such clerical assistance in naturalization matters as the State or county authorities may choose to allow? Congress says the additional clerical force required for naturalization shall be paid by the clerk from these fees. Can the State command that the clerk pay these fees into the county treasury, and depend upon the county board to determine what sum, if any, is needed for additional clerical aid? The supremacy of Congress over the entire subject of naturalization seems to imperatively require a negative answer. It seems to us, after a fair consideration of all the language of the act, that the conclusion is justified that the sums which the clerk is thereby allowed to retain were intended not merely nor not chiefly to pay the clerk himself for his additional labor, but to enable him to procure all the necessary clerical assistance to do the work which the

act imposed upon him. Of course, when the court and the clerk are acting under this law, they are governed by this law and not by the State statutes. The act requires that one-half the fees shall be remitted by the clerk to the United States government, and by no possibility can the county have any right to require the clerk to pay that money to it, although it is made up of fees paid to the clerk by virtue of his office. If the total received by the clerk in any one year for naturalization exceeds $6,000, then the act requires him to remit all beyond that to the United States government. The act provides that if the clerk has so received more than $6,000 in any one year, and has remitted $3,000 to the United States government, and also the sum in excess of $6,000, the department may allow such clerk, from the money which the United States shall receive, additional compensation for the employment of additional clerical assistance, if, in the opinion of said department, the naturalization business of such clerk warrants such further additional assistance; but that in no event shall the whole amount allowed a clerk of a court and his assistants exceed one-half the gross receipts of the office of such clerk from naturalization fees during said fiscal year. There is a further provision that if the business of the clerk for any fiscal year indicates, in the opinion of the department, that the naturalization fees for the succeeding year will exceed $6,000, the department may authorize the continuance of the allowance for additional clerical assistance, until such time as the remittances indicate to the department that the fees of the then current fiscal year will not be sufficient to allow such additional clerical assistance, and that the payments for such additional clerical assistance shall be in the manner and under such regulations as the department may prescribe. If, when the Act of 1906 went into effect, the duties of this circuit clerk imposed upon him by the laws of this State had been such that his own services and

those of the clerical force which had been allowed to
him by the laws of the State were just sufficient to ac-
complish the work of the office required by the State,
and he had applied to the county board for an allow-
ance for additional assistance to perform the natural-
ization work, the county board would have been under
no compulsion to allow it. It might very reasonably
say to him that he had an allowance out of the natural-
ization fees, which was intended to pay for all such
help as the naturalization work might require. Sup-
pose the county board refused to make him any addi-
tional allowance; would he still be required to pay one-
half of the fees to the county board? Suppose that in
that contingency, or even without having consulted the
county board at all, he hired an additional clerk to per-
form the naturalization work, and agreed to pay him
his one-half of all the fees paid in from naturalization
sources, and he did so pay the money to the additional
clerk so hired, could the county board still require him
to pay that money into the county treasury? Would
his official bond still be liable therefor? Suppose the
clerk receives for his one-half over $3,000, and pays
the surplus to the United States government, and
thereafter applies to the department for additional
clerical assistance, and is authorized by the depart-
ment to pay from said fees a certain sum for addi-
tional clerical assistance, and that sum is returned
to him by the United States government or is paid by
him out of the fees in his hands, must he be com-
pelled to pay to the county treasurer the money which
the United States has so furnished expressly for addi-
tional clerical assistance? It seems to this court that
the answers to these questions must be in the nega-
tive. The declaration now before us does not charge
that this county board made any allowance to this
clerk for clerical assistance to do the naturalization
work, or that the clerical assistance which had been
furnished him by the county board was sufficient to

enable him, with that force, not only to perform the duties devolving upon him under the State law but also to do the naturalization work. This declaration is to be construed most strongly against the pleader, and we think we may fairly assume that the county board had made him no allowance for clerical assistance to do this work, especially as it is clear that no duty rested upon the county board to make any such allowance. We draw the conclusion, from this Naturalization Act, that Congress intended that the State should not bear the burden of the clerical assistance necessary to do this work, but that it intended that the clerk should use these fees for that purpose.

This question has been before the courts of several other States, and in most of those States provisions similar to our own exist, requiring the clerk to perform his official duties for a fixed salary, and to turn his fees into some local treasury. The question first arose in *Eldredge v. Salt Lake County*, 37 Utah 188. It was there held that the State courts in acting in naturalization cases under this act are merely agencies of the national government; that the powers conferred and the duties imposed by said act upon State courts and the clerks thereof are not such as adhere to the office, and are not *ex officio* powers and duties belonging to and devolving upon the office as such, and that the duties which the clerk of the State court shall render in naturalization proceedings are not duties which are imposed on him nor services which are rendered by him as a part of the county office, to which he was elected, and of which he is an incumbent, and that the salary which he received as compensation for discharging the duties of his county office was not intended to and did not constitute compensation for the extra official services he rendered as an agent of the general government in discharging the powers conferred upon him by the Act of Congress, for which services the fees in question were allowed him by the

national and not by the State government. In *Inhabitants of Hampden County v. Morris,* 207 Mass. 167, the same question was presented to the Supreme Court of Massachusetts, where there was a statute passed after this Naturalization Act went into force, requiring that all fees received by the clerk in naturalization cases, except sums expended for additional clerical assistance, should be paid to the county treasurer. It was held that that statute conflicted with the Federal statute, and must yield to the latter. It was there held that if the courts or Legislature of the State elected to exercise the jurisdiction conferred by the Federal statute, they must exercise it upon the terms and with the limitations stated in that statute, and if they chose to exercise jurisdiction in, naturalization cases, they might not depart from the statute in any particular upon which it is within the constitutional power of Congress to legislate; that the amount of the fees to be charged and the disposition of the fees are proper subjects for congressional legislation; that is, that Congress might properly require a part of those fees to be paid into the treasury of the United States to aid in the payment of the expenses of maintaining the naturalization department, and that the State cannot take those fees away from the United States. It was there further said: "Congress well might think that the elaborate proceedings required by the statute impose such duties upon clerks of the courts that the interests of the public will be promoted by giving them special compensation to be taken from the fees. As this is the policy of the law under which the court is acting, the Legislature cannot nullify the statute by enacting that the clerk shall pay all the money to the county treasurer." It was there held that it was beyond the power of the Legislature to deal with the fees received under the law of the United States. This question was next before the Supreme Court of New York, and is reported in *In re Beyer,* 72

Misc. 443. That court followed the decision of the Supreme Court of Massachusetts, but said but for that decision it would have been inclined to hold that the Federal statute was simply designated to reimburse the office for the clerical force required, rather than to provide for the personal and independent emolument of the incumbent of the office. In *Fields v. Multnomah County,* 64 Ore. 117, the clerk of such a court sought to compel the county commissioners to pay his statutory salary, which they refused to do because he had collected certain fees under this naturalization law, and had appropriated them to his own use, and had refused to account to the county therefor. That court held that the compensation provided for such clerk by the laws of the State was for the performance of the duties devolving on him under those laws; that if the State courts exercised the jurisdiction conferred by this Federal statute, the duties of the clerk in those matters were in addition to those imposed by the State; that in naturalization proceedings the clerk acts as the agent of the United States, and that the State cannot direct what the compensation of an agent of the general government, acting under a law of Congress, shall be; and that the clerk was entitled to receive and retain those fees, and was not required to pay them to the county. In *State v. Quill,* 53 Ind. App. 495, this question was before the Appellate Court of Indiana. There a Statute of 1895 fixed the fees for naturalization, and required them to be turned over to the county. It was held that these provisions were repealed by the Naturalization Act of Congress of 1906, and that since the enactment of the latter act it constitutes the only law on the subject of fees in naturalization cases. It was held that Congress might properly regulate not only the amount of the fees but also the disposition of them; that the State court, when it assumes jurisdiction in naturalization cases, must exercise it in conformity with the Federal statute, and derives no au-

thority from any other source. It is there said: "It becomes a Federal court for the purpose of naturalizing aliens, or at least an agency of the Federal government, and the officers of the court are necessarily the officers of the Federal government in that behalf." It was held that the county could not recover from the clerk the one-half the fees collected by him in naturalization proceedings. On the other hand in *Barron County v. Beckwith,* 142 Wis. 519, it was held that the services performed by clerks of the Circuit Court in proceedings to naturalize aliens under this statute are performed in their official capacities as such clerks, and they are not permitted to hold such fees, as against the counties, where they are on a salary basis, although the court there conceded that it found the question by no means easy of solution. In *City and County of San Francisco v. Mulcrevy,* 15 Cal. App. 11, it was held that the disposition of the fees received by the county clerk as *ex officio* clerk of the Superior Court, which had jurisdiction of naturalization proceedings under the Federal statute, did not concern the United States government, but was a matter solely between the clerk and the city and county of San Francisco, and that it was the official duty of that clerk under the charter of said city and county to pay such fees into the treasury of the city and county within twenty-four hours after they were received by him. In that case, the court sets out as important the salary of the county clerk fixed by the charter, and also the sums allowed him for the various clerical assistance he required. It is stated there that the total salary list so fixed and allowed for his office amounted to $58,600 per annum, but a computation of the amounts fixed by the charter for the salaries of his forty-nine assistants, as stated in the opinion, shows that he was allowed for clerical assistance $71,400 per year, besides his own salary, and the court there said that it concluded that that clerical allowance by the charter was intended to

cover all the services that might be required of that clerk, and to pay all the deputies and employees that might be necessary in performing such services. There was also a provision of the law governing such clerk, that if he needed additional deputies, clerks and employees he should apply to the mayor therefor, and, if the mayor found the same necessary, he could take steps to authorize such appointments and provide for additional compensation. This case had been first appealed to the Supreme Court of California, and had been by that court sent to said Appellate Court under a provision of the State Constitution, and after the decision of the Appellate Court an application was made to the Supreme Court to hear the cause, and that application was denied. Thereafter, the case was removed to the Supreme Court of the United States, where it is reported as *Mulcrevy v. City and County of San Francisco,* 231 U. S. 669. That court accepted the construction of the charter of the city and county which had been put upon such charter by the State courts, as, indeed, it was bound to do. It stated the great amount of clerical assistance given said clerk by said charter, and the provision requiring the clerk to apply to the mayor for additional assistance if needed. The State court had held that the provisions of the charter were meant to provide for all services which could be required of the clerk, and for all employees he might need in performing all such services. The Supreme Court of the United States accepted that construction as correct. There are things said by the latter court which do not harmonize with what was held by the courts of Massachusetts, Utah, Oregon and Indiana. It seems to us, however, that what was actually decided was that the Naturalization Act did not purport to deal with the relations of the clerk to his State; that to so construe it might raise serious questions of power which should be avoided; and that the Naturalization Act could be satisfied without put-

ting the clerk in antagonism with the laws of his State, by leaving the clerk one-half of the fees to such disposition as might be provided by the State law. The State court had held that the clerk had been provided with sufficient clerical assistance to do all the work, or provided means to obtain additional assistance, which the clerk was required to resort to if needed; and had held that his contract with the city and county required him to turn his fees into its treasury every twenty-four hours. The Supreme Court of the United States, finding that the work had been done, and that the State court had determined that a sufficient clerical force had been provided by the city and county, refused to interfere with the decision of the highest court of the State as to the meaning of the contract between the clerk and the municipality. We think it obvious, from the tenor of the decision, that if the State courts had decided the other way, that decision would have been equally approved. The real point of the Federal decision is that the clerical force having been provided and paid for by the city and county, the United States will not interfere with the conclusion of the highest State court as to the disposition to be finally made of the one-half of the fees retained by the clerk. The Federal court does not discuss the question of the duty and right of the clerk to obtain additional clerical assistance out of his half of the fees if the county authorities refuse or fail to furnish him with the clerical assistance needed to do the naturalization work.

The decision of the Supreme Court of the United States in the *Mulcrevy* case, *supra,* throws doubt upon what we would otherwise regard as clear; yet in view of the fact that it had there been determined by the court of last resort in the State that the necessary clerical force had been provided by the city and county, and that the nature of the contract between the clerk and the municipality had been construed by the court

of last resort on that subject, and in view of the language we have quoted from the Naturalization Act, commanding the clerk to pay, from the fees received by him in naturalization proceedings, all additional clerical force required to perform his duty on naturalization cases, and that this and similar language of the act is not discussed by the Supreme Court of the United States, we conclude that the courts of Illinois are left entirely free to decide the question here presented in such manner as our courts conclude is most consonant with the language and purposes of the Federal act and of our constitution and laws. It is our conclusion that the provisions of our Constitution and laws requiring clerks of courts to pay the fees received by them into the county treasury were intended to legislate only concerning services performed by such clerks under the statutes of this State; that the provisions of the Federal laws in behalf of clerks of courts were intended to enable them to procure such clerical assistance as they might require in performing their duty under the Naturalization Act without casting any burden upon the county or the State, and that the county has no claim upon such money, and especially so in this case, where the pleader has not alleged that any clerical force for the work of naturalization had been provided or paid for by the county, but the liability is alleged to exist solely because the clerk received said fees and did not pay them into the county treasury.

The judgments are therefore affirmed.

*Affirmed.*